David **LAJEUNESSE**, Plaintiff,

v.

The **GREAT ATLANTIC & PACIFIC TEA COMPANY, INC.**, Waldbaum's Foodmart, Inc. and Donald Knoll Defendants.

**CIV.A. No. 399CV01630AWT.**

United States District Court, D. Connecticut.

Aug. 31, 2001.

Otto P. Witt, James S. Brewer, West Hartford, CT, for plaintiff.

Felix J. Springer, Daniel Adam Schwartz, Meredith G. Diette, Day, Berry & Howard, Hartford, CT, for defendants.

### RULING ON THE MOTION FOR SUMMARY JUDGMENT

THOMPSON, District Judge.

The plaintiff, David Lajeunesse, has alleged that the defendants wrongfully terminated his employment. The defendants have moved for summary judgment as to all claims. For the reasons set forth below, the motion for summary judgment is being granted.

### I. BACKGROUND

Defendant The Great Atlantic & Pacific Tea Company ("A & P") owns and operates grocery stores throughout the United States and Canada. Defendant Waldbaum's is a subsidiary of A & P, and operates a number of grocery stores in and around the New England area, including in Connecticut. Defendant Knoll was the store manager of the Rocky Hill, Connecticut store, where the plaintiff was working at the time his employment was terminated.

On October 31, 1988, Waldbaum's hired the plaintiff to work as the night crew chief at its Manchester, Connecticut store. The plaintiff was transferred from store to store as business needs arose. Around 1990, he was promoted to the position of Assistant Grocery Manager at the Newington, Connecticut store. In February 1997, Waldbaum's transferred the plaintiff to its Rocky Hill, Connecticut store to supervise the night shift there.

In January 1998, the plaintiff's direct supervisor and defendant Knoll prepared a review of the plaintiff's job performance, as an Assistant Grocery Manager, for 1997. Annual performance reviews are conducted by ranking employees in ten different categories on a scale of one to five. Overall performance is determined by averaging those ten scores. An overall average score of 3.6 or above is considered to exceed expectations. A score between 2.6 and 3.59 is considered to meet expectations. A score of 2.59 or below is considered to not meet expectations. The plaintiff received an overall score of 2.73. He reviewed and signed the performance review in March 1998.

On May 9, 1998, the plaintiff injured his right shoulder while turning a crank on the recycle bin at work. He was admitted to Manchester Memorial Hospital, where the treating physician, Dr. Klaus, diagnosed the plaintiff as having suffered a "rotator cuff injury" to his right shoulder. In releasing the plaintiff from the hospital, she stated that he was able to return to work immediately on a "modified" basis, with the limitations that he not use his right arm and hand and that he not be required to lift any object heavier than 15 pounds with his left hand. The doctor gave him a note to this effect. She also recommended that he take a couple of days off from work, and gave him a separate note to that effect. Prior to this injury, there were no physical limitations on the plaintiff's ability to perform his job.

On May 10, 1998, the plaintiff returned to work and gave Knoll the doctor's notes. He notified Knoll that because of his injury he needed to take a couple of days off from work and that he intended to file a worker's compensation claim. Knoll indicated that as a manager, the plaintiff could not afford to take several days off from work and that if he did so, he would be fired. Knoll determined that the plaintiff should return to work with the restriction

recommended by the doctor. The plaintiff returned to work the following day.

On May 27, 2001, the plaintiff saw his regular orthopedic doctor, Dr. Messinger, for a check-up. Dr. Messinger diagnosed the plaintiff as suffering from a right shoulder sprain, rotator cuff tendinitis and a possible tear. He recommended some treatments and concluded that the plaintiff was able to return to work full duty if he exercised caution in lifting.

From late 1997 through 1998, for financial reasons, Waldbaum's began to close certain of its stores and to reduce its workforce. In 1997 and early 1998, Waldbaum's closed over ten stores and reduced its workforce accordingly. Then, in mid–1998, it closed an additional three stores, which necessitated, *inter alia,* a reduction in the managerial ranks, including the position of Assistant Grocery Manager. On each occasion, Waldbaums' procedure for reducing its workforce was based on a comparison of the performances of all employees at all stores in the same job classification.

In connection with the reduction in the workforce pursuant to which the plaintiff's employment was terminated, Waldbaums' Director of Personnel, Sheila McCloskey, analyzed the position of Assistant Grocery Manger. She did so by comparing the overall performance scores from the performance reviews for 1997 of the individuals in position of Assistant Grocery Manager; this encompassed 35 stores.[1] No other documents were relied upon to make the decision as to which employees to terminate. McCloskey also discussed the performance of the employees holding this position with Waldbaum's Vice President of Operations, Chuck McCutchen, and District Manager, Ray Elumba. The plaintiff

had received a score of 2.73 and ranked last in overall performance among all of the night managers, and, in fact, among all of the Assistant Grocery Managers.

Based on the 1998 performance scores and their personal knowledge of the employees' performance, both McCloskey and Elumba recommended to McCutchen that three Assistant Grocery Managers, including the plaintiff, be terminated. In July 1998, Waldbaum's terminated the plaintiff's employment at a meeting between the plaintiff, McCutchen, McCloskey and Elumba. Defendant Knoll, who reported to Elumba, was not involved in the decision to terminate the plaintiff's employment and was not aware of the termination until it had occurred. On or about July 31, 1998, the plaintiff filed a worker's compensation claim related to his shoulder injury.

Subsequently, the plaintiff worked as the deli manager of Santilli's Market. He states that he was able to perform that job with "just a little, not much" restriction from his shoulder injury. Pl.'s Dep. (Defs.' Statement of Undisputed Facts (doc. # 55), Exh. 3) at 99. Since September 21, 1998, the plaintiff has worked as the dairy manager at Shaw's Supermarket. In this position, his tasks include stocking shelves and lifting objects which weigh five to ten pounds. His right shoulder bothers him, but he is able to perform all of his job-related tasks on a daily basis.

## II. *LEGAL STANDARD*

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of

---

1. The plaintiff points to a second performance review, in which his overall performance score was 2.96. However, he was promoted

during the year and that review was not for his work in the position of Assistant Grocery Manager.

law. Fed.R.Civ.P. 56(c). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1223 (2d Cir.1994). Rule 56(c) "mandates the entry of summary judgment... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548.

When ruling a motion for summary judgment, the court must respect the province of the jury. The court, therefore, may not try issues of fact. *See, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 58 (2d Cir. 1987); *Heyman v. Commerce & Indus. Ins. Co.,* 524 F.2d 1317, 1319–20 (2d Cir. 1975). It is well-established that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined... to issue-finding; it does not extend to issue-resolution." *Gallo,* 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is *both* genuine *and* related to a material fact. Therefore, the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. An issue is "genuine... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505 (internal quotation marks omitted). A material fact is one that would "affect the outcome of the suit under the governing law." *Id.* As the Court observed in *Anderson:* "[T]he materiality determination rests on the substantive law, [and] it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Id.* Thus, only those facts that *must* be decided in order to resolve a claim or defense will prevent summary judgment from being granted. When confronted with an asserted factual dispute, the court must examine the elements of the claims and defenses at issue on the motion to determine whether a resolution of that dispute could affect the disposition of any of those claims or defenses. Immaterial or minor facts will not prevent summary judgment. *See Howard v. Gleason Corp.,* 901 F.2d 1154, 1159 (2d Cir.1990).

When reviewing the evidence on a motion for summary judgement, the court must "assess the record in the light most favorable to the non-movant and... draw all reasonable inferences in its favor." *Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir.2000) (quoting *Del. & Hudson Ry. Co. v. Consol. Rail Corp.,* 902 F.2d 174, 177 (2d Cir.1990)). Because credibility is not an issue on summary judgment, the nonmovant's evidence must be accepted as true for purposes of the motion. Nonetheless, the inferences drawn in favor of the nonmovant's evidence must be supported by the evidence. "[M]ere speculation and conjecture" is insufficient to defeat a motion for summary judgment. *Stern v. Trustees of Columbia Univ.,* 131 F.3d 305, 315 (2d Cir.1997) (quoting *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990)). Moreover, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position" will be insufficient; there must be evidence on which a jury could "reasonably

find" for the nonmovant. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

Finally, the nonmoving party cannot simply rest on the allegations in its pleadings since the essence of summary judgment is to go beyond the pleadings to determine if a genuine issue of material fact exists. *See Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact," *Weinstock*, 224 F.3d at 41, if the movant demonstrates an absence of such issues, a limited burden of production shifts to the nonmovant, which must "demonstrate more than some metaphysical doubt as to the material facts, . . . [and] must come forward with specific facts showing that there is a genuine issue for trial." *Aslanidis v. United States Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir.1993) (quotation marks, citations and emphasis omitted). Furthermore, "unsupported allegations do not create a material issue of fact." *Weinstock*, 224 F.3d at 41. If the nonmovant fails to meet this burden, summary judgment should be granted. The question then becomes: is there sufficient evidence to reasonably expect that a jury could return a verdict in favor of the nonmoving party. *See Anderson*, 477 U.S. at 248, 251, 106 S.Ct. 2505.

### III. *DISCUSSION*

#### A. *Americans with Disabilities Act Claims*

In the First and Second Counts of the Amended Complaint, the plaintiff alleges that Waldbaum's and A & P discriminated against him in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"), when they terminated his employment months after he suffered an injury to his right shoulder that rendered him unable to do heavy lifting with his right arm.

■ The ADA makes it unlawful for a covered employer to "discriminate against a qualified individual with a disability because of the disability." 42 U.S.C. § 12112(a). A plaintiff who raises a claim of disability discrimination bears the initial burden of establishing a *prima facie* case. *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 869 (2d Cir.1998); *Wernick v. Fed. Reserve Bank of N.Y.*, 91 F.3d 379, 383 (2d Cir.1996). Specifically, the plaintiff must demonstrate that "(1) [his] employer is subject to the ADA; (2)[he] suffers from a disability within the meaning of the ADA; (3)[he] could perform the essential functions of [his] job with or without reasonable accommodation; and (4)[he] suffered an adverse employment action because of [his] disability." *Ryan*, 135 F.3d at 869–70.

■ The plaintiff fails to establish a *prima facie* case because he has not demonstrated that he is a person with a disability within the meaning of the ADA. The ADA defines "disability" with respect to an individual as:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). Here, the plaintiff alleges that he is actually disabled under § 12102(2)(A).

The Supreme Court has articulated a three-step process for determining whether a plaintiff has a disability under subsection (A) of 42 U.S.C. § 12102(2). *See Bragdon v. Abbott*, 524 U.S. 624, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998). First, the court must consider whether the plaintiff has a physical or mental impairment. *Id.*

at 631, 118 S.Ct. 2196. Second, the court must identify the life activity upon which the plaintiff relies and determine whether it constitutes a major life activity under the ADA. *Id.* Third, the court must ask whether the impairment substantially limits the major life activity. *Id.* "In order to be eligible to prevail upon a further showing of discrimination, a plaintiff must satisfy each of the three prongs." *Colwell v. Suffolk County Police Dep't,* 158 F.3d 635, 641 (2d Cir.1998).

■ The term "substantially limits" means:

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1). The plaintiff bears the burden of establishing that he is substantially limited in a major life activity. *Colwell,* 158 F.3d at 643. In determining whether an impairment substantially limits a major life activity, three factors are considered: (i) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment. 29 C.F.R. § 1630.2(j)(2).

■ Here, the plaintiff asserts that he is actually disabled within the meaning of § 12102(A) for the following reasons: his shoulder injury required surgery and an extended period of recuperation; prior to the surgery, he could only sleep a few hours a night and was unable to perform routine lifting; if it were not for the sur-gery, he would probably not be able to lift anything without severe pain; he has permanently lost 8% of the use of his right shoulder; and, he was out of work on temporary total disability leave for a month following the surgery and recuperation period, and was substantially limited for an additional six months.

As to the first step of the *Bragdon* analysis, the plaintiff has suffered a physical impairment; he is impaired in the use of his right shoulder.

■ As to the second step of the *Bragdon* analysis, the plaintiff states that his impairment substantially limits the activities of sitting, standing, lifting, reaching and sleeping. These activities have been found to be major life activities under the ADA. *See Ryan,* 135 F.3d at 870 ("major life activities include ... sitting, standing, lifting, or reaching") (citation omitted); *Colwell,* 158 F.3d at 643 ("sleep ... is undoubtedly a major life activity").

■ However, the plaintiff fails to meet the requirements of the third step of the *Bragdon* analysis because he has not produced evidence that his physical impairment substantially limits his ability to sit, stand, lift, reach or sleep under either part of the definition of "substantially limits." First, there is no evidence that he is "unable" to sit, stand, lift, reach or sleep due to his impairment. 29 C.F.R. § 1630.2(j)(1)(i). Second, there is no evidence that he is "significantly restricted as to the condition, manner or duration" under which he can sit, stand, lift, reach or sleep. 29 C.F.R. § 1630.2(j)(1)(ii). As to sitting and standing, the plaintiff has introduced no evidence concerning any limitation of these life activities. As to lifting and reaching, the plaintiff has conceded that he works at a job that is similar to his former position at Waldbaum's and that he is able to perform all of the physical tasks

that are required for that position. The plaintiff's condition improved after his surgery and much of the discomfort to which he refers was temporary. "[T]emporary injuries ... without substantial limitations and permanent effects, do not warrant the protections of the ADA." *Stronkowski v. St. Vincent's Med. Center,* Civ. No. 3:94CV2175 (AHN), 1996 WL 684407, at *7 (D.Conn. Aug. 1, 1996). The plaintiff's reliance on his permanent injury rating is not sufficient, in and of itself, to establish that he is disabled where the record shows that that permanent impairment does not substantially limit any of his major life activities. *See also Aquinas v. Federal Express Corp.,* 940 F.Supp. 73, 78 (S.D.N.Y.1996) (employee diagnosed with condition in left shoulder that caused her to have trouble lifting packages at work was not disabled under the ADA because there was no evidence that there was a restriction on employment generally); *Hutchinson v. United Parcel Service, Inc.,* 883 F.Supp. 379, 395–96 (N.D.Iowa 1995) (back and shoulder injuries were not minor, but were temporary, and any remaining impairment was admittedly only slight; thus plaintiff was not disqualified from a wide range of jobs, and had failed to demonstrate substantial limitations in any other major life activity).

▆ As to sleeping, the plaintiff alleges that before his surgery, he was unable to sleep more than a few hours a night and that since his surgery he has not been able to sleep more than four or five hours a night. However, "[d]ifficulty sleeping is extremely widespread. [The plaintiff has] made no showing that his affliction is any worse than is suffered by a large portion of the nation's adult population." *Colwell,* 158 F.3d at 644.

▆ Assuming, *arguendo,* that the plaintiff also contends that his disability is based on a limitation of the major life activity of working, the court finds that he is not substantially limited in his ability to work.

Pursuant to the ADA, an individual's "inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. S 1630.2(j)(3)(ii). Rather, there must be a significant restriction on employment generally, i.e., on plaintiff's ability to perform "a class of jobs or a broad range of jobs" as compared to an average person of comparable skills and training. 29 C.F.R. § 1630.2(j)(3)(ii); *Byrne v. Bd. of Education, School of West Allis–West Milwaukee,* 979 F.2d 560, 565 (7th Cir.1992)

*Aquinas,* 940 F.Supp. at 78.

▆ As the Second Circuit has stated, "a plaintiff who showed that he had an impairment and that the impairment affected a major life activity would nonetheless be ineligible if the limitation of the major life activity was not substantial." *Colwell,* 158 F.3d at 641.

The court notes that the ... ADA assure[s] that truly disabled, but genuinely capable, individuals will not face discrimination in employment because of stereotypes about the insurmountability of their handicaps. It would debase this high purpose if the statutory protections available to those truly handicapped could be claimed by anyone whose disability was minor and whose relative severity of impairment was widely shared. Indeed, the very concept of an impairment implies a characteristic that is not commonplace and that poses for the particular individual a more general disadvantage in his or her search for satisfactory employment.

*Stronkowski,* 1996 WL 684407, at *7 (citing *Venclauskas v. Conn. Dept. of Public Safety Div. of State Police,* 921 F.Supp. 78,

81 (D.Conn.1995) (quoting *Forrisi v. Bowen,* 794 F.2d 931, 934 (4th Cir.1986))). Accordingly, the court concludes that the plaintiff is not a "qualified individual with a disability" under the ADA, and that summary judgment in favor of the defendants is appropriate on the ADA claims set forth in the First and Second Counts.

## B. CFEPA Claims

 In the Eighth and Ninth Counts of the Amended Complaint, the plaintiff alleges that Waldbaum's and A & P discriminated against him on the basis of his disability in violation of the Connecticut Fair Employment Practices Act, Conn. Gen.Stat. § 46a–60 ("CFEPA"). The state courts of Connecticut look to federal precedent in reviewing CFEPA claims. *See Levy v. Comm'n on Human Rights and Opportunities,* 236 Conn. 96, 103–04, 671 A.2d 349 (1996).

Section 46a–60(a)(1) provides that it is discriminatory for "an employer ... to discharge from his employment any individual ... because of the individual's ... physical disability, including, but, not limited, to blindness." "Physically disabled" is, in turn, defined under Conn. Gen.Stat. § 46a–51(15) as "any individual who has any chronic physical handicap, infirmity or impairment, whether congenital or resulting from bodily injury, organic processes or changes or from illness, including, but not limited to, epilepsy, deafness or hearing impairment or reliance on a wheelchair or other remedial appliance or device."

The plaintiff has failed to offer any evidence to demonstrate that his condition falls with the definition of physical disability in the Connecticut statute. Accordingly, summary judgment in favor of the defendants is appropriate on the CFEPA claims set forth in the Eighth and Ninth Counts. *See Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548 (if a nonmoving party has failed to make a sufficient showing on

an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate).

## C. Retaliation Claims

In the Third, Fourth and Twelfth Counts of the Amended Complaint, the plaintiff alleges that Waldbaum's and A & P terminated his employment in retaliation for his filing a worker's compensation claim, in violation of Conn. Gen.Stat. § 31–290a(a). The plaintiff bases these claims on the fact that his employment was terminated two months after he informed his manager that he had suffered an injury to his right shoulder that would necessitate some time off from work and surgery, and that he would be filing a worker's compensation claim. He also contends that although he was told that Waldbaum's was terminating his employment because it was closing its store in Chicopee, Massachusetts, that store has not been closed and no employees were transferred from the Chicopee store to Connecticut stores.

 In cases brought pursuant to § 31–290a, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *Ford v. Blue Cross & Blue Shield of Conn., Inc.,* 216 Conn. 40, 54, 578 A.2d 1054 (1990) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).

Under *McDonnell Douglas* and [*Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) ], the plaintiff first must establish a prima facie case of discrimination. The burden then shifts to the employer to counter the prima facie case by advancing a legitimate, non-discriminatory reason for its actions. The plaintiff in turn may attack the employer's explanation by showing evidence that the purported non-discriminatory reason

was not true and in fact was a pretext for discrimination.

*Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 83 (2d Cir.1990). Here, the plaintiff has not come forward with evidence that could support a conclusion he was the subject of retaliation. He relies solely upon the fact that the termination of his employment took place after he had indicated that he intended to file a worker's compensation claim, which claim was not actually filed until after the termination. "Absent any other evidence of retaliatory motive, mere temporal proximity alone is insufficient." *Gallo v. Eaton Corp.*, 122 F.Supp.2d 293, 303–04 (D.Conn.2000) (*prima facie* requirements not met where plaintiff only offered temporal evidence that he was terminated two years after filing EEOC charge) (citing *Hollander*, 895 F.2d at 85–86 (no *prima facie* case of retaliation where plaintiff only offered evidence that adverse employment action occurred three months after his complaint)). The plaintiff relies solely upon "mere speculation and conjecture," *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 315 (2d Cir.1997), which are insufficient to create a genuine issue of material fact as to these claims. The court need not inquire into the legitimacy of the reason given for the termination because the plaintiff has not established a *prima facie* case of discrimination. Accordingly, summary judgment in favor of the defendants is appropriate on the retaliation claims set forth in the Third, Fourth and Twelfth Counts.

### D. *ERISA Claims*

█ In the Fifth and Sixth Counts of the Amended Complaint, the plaintiff alleges that Waldbaum's and A & P terminated his employment in order to deny him the right to pension benefits, in violation of the Employee Retirement Income Security Act, 29 U.S.C. § 1140 ("ERISA"). The statute provides that "[i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary ... for the purpose of interfering with the attainment of any right to which such participant may become entitled under [an employee benefit plan]." *Id.*

The plaintiff's testimony at his deposition reflected the fact that his allegations as to these counts rest solely upon "mere speculation and conjecture," *Stern*, 131 F.3d at 315, and he states in his opposition that he is not pursuing these ERISA claims. His claims are in any event without merit. The record shows that the loss of his vested right to participate in A & P's retirement program was nothing more than one of the consequences of the termination of his employment. "No ERISA cause of action lies where the loss of pension benefits was a mere consequence of, but not a motivating factor behind, a termination of employment." *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1110 (2d Cir.1988) (citation omitted). Accordingly, summary judgment in favor of the defendants is appropriate on the ERISA claims set forth in the Fifth and Sixth Counts.

### E. *Negligent Infliction of Emotional Distress Claims*

█ In the Seventh Count of the Amended Complaint, the plaintiff alleges that Waldbaum's and A & P are liable for their negligent infliction of emotional distress on the plaintiff. In order to prevail on a claim for negligent infliction of emotional distress, a plaintiff must show that "the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it was caused, might result in illness or bodily harm." *Montinieri v. S. New England Tel. Co.*, 398 A.2d 1180, 1184, 175 Conn. 337, 345 (1978). The

*Montinieri* test "requires that the fear or distress experienced by the plaintiff[ ] be reasonable in light of the conduct of the defendant[ ]." *Barrett v. Danbury Hosp.*, 654 A.2d 748, 757, 232 Conn. 242, 261 (1995).

Here, there is no evidence that would support a finding that the conduct of either Waldbaum's or A & P involved an unreasonable risk of causing severe emotional distress that might result in illness or bodily harm. The plaintiff does not complain of the manner in which the defendants terminated his employment. To the extent that he incorporated into his claim the allegations in the ERISA claim in the Sixth Count, he has conceded this claim because he conceded the ERICA claims. What is left then is the claim that the fact that his employment was terminated at all has caused him emotional distress. However, "[t]he mere termination of employment, even where it is wrongful, is therefore not, by itself, enough to sustain a claim for negligent infliction of emotional distress. The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior." *Parsons v. United Techs. Corp.*, 243 Conn. 66, 88, 700 A.2d 655 (1997). Accordingly, summary judgment in favor of the defendants is appropriate on the claim for negligent infliction of emotional distress set forth in the Seventh Count.

### F. *CFEPA Claim Against Defendant Knoll*

In the Tenth and Eleventh Counts, the plaintiff alleges that defendant Knoll assisted in the discriminatory termination of his employment, in violation of the CFEPA, Conn. Gen.Stat. § 46a–60(a)(4) and (5). The statute provides that it is unlawful:

(4) For any person, employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because he has opposed any discriminatory employment practice or because he has filed a complaint or testified or assisted in any proceeding under section 46a–82, 46a83 or 46a–84;

(5) For any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any act declared to be a discriminatory employment practice or to attempt to do so;

Conn. Gen.Stat. § 46a(60)(a).

The plaintiff has failed to offer any evidence that defendant Knoll was involved in the decision to terminate his employment. He concedes that he does not know whether Knoll was involved in that decision and argues instead that Knoll is responsible for the low score on the performance review on which the decision-makers relied. He also speculates that Knoll provided other information about his job performance to the decision-makers. However, this is "mere conjecture and speculation," *Stern*, 131 F.3d at 315, and does not create a genuine issue of material fact as to whether Knoll violated Conn. Gen.Stat. § 46a–60(a)(4) or (5). By way of contrast, the defendants have affirmed that Knoll was not involved in the decision to terminate the plaintiff's employment. Accordingly, summary judgment in favor of defendant Knoll is appropriate on the CFEPA claims set forth in the Tenth and Eleventh Counts.

### V. *Conclusion*

For the reasons stated above, the Defendants' Motion for Summary Judgment (doc. # 53) is hereby GRANTED.

This Clerk shall close this case.

It is so ordered.