Carl BROWN, Plaintiff,

v.

FARMLAND FOODS, INC., Defendant.

No. C00–4139–MWB.

United States District Court,
N.D. Iowa,
Western Division.

Dec. 28, 2001.

Dennis M. McElwain, Smith & McElwain, Sioux Cuity, IA, for plaintiff.

Eric W. Smith, Brent N. Coverday, Shook, Hardy & Bacon, L.L.P., Kansas City, MO, for defendant.

## MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BENNETT, Chief Judge.

### TABLE OF CONTENTS

I. INTRODUCTION ................................................. 965
 A. Procedural Background ................................... 965
 B. Disputed And Undisputed Facts ......................... 966

II. DISCUSSION .................................................. 968
 A. Standards For Summary Judgment ...................... 968
 1. Requirements of Rule 56 ........................... 968
 2. The parties' burdens .............................. 969
 3. Summary judgment in employment discrimination cases ................. 969
 B. Brown's Disability Claims ............................... 971
 1. Actual disability claim: 42 U.S.C. § 12102(2)(A) ......................... 972
 2. Perceived disability claim: 42 U.S.C. § 12102(2)(C) ..................... 974
 3. Failure-to-accommodate claim ...................... 978
 C. Discharge In Violation Of Public Policy Claim ........... 978
 1. Analytical framework .............................. 979
 2. Prong one: Protected activity ...................... 980
 3. Prong two: Adverse employment action ............ 980
 4. Prong three: Causal connection .................... 981
 5. Farmland's stated legitimate reason for dismissing Brown .............. 984

6. Pretext ....................................................................984
D. Supplemental Jurisdiction Of State–Law Claim ...........................985

III. CONCLUSION ..............................................................986

## I. INTRODUCTION

In this employment discrimination and discharge in violation of public policy case, the plaintiff, Carl Brown ("Brown"), contends that his discharge from Farmland Foods, Inc. ("Farmland") violated the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., the Iowa Civil Rights Act ("ICRA"), chapter 216 of the Iowa Code, and Iowa public policy. The plaintiff filed a charge with the Iowa Civil Rights Commission ("ICRC"), which was cross-filed with the Equal Employment Opportunity Commission ("EEOC"), on January 5, 2000. He received his right-to-sue letter from the ICRC on July 24, 2000 and from the EEOC on July 31, 2000. This lawsuit was filed on October 20, 2000 and, therefore, is timely.

### A. Procedural Background

■ The complaint contains four counts: (1) illegal discharge because of an actual disability and failure to accommodate in violation of the ADA; (2) illegal discharge because of a perceived disability; (3) illegal discharge and failure to accommodate in violation of Chapter 216 of the Iowa Code; and (4) illegal discharge in violation of Iowa public policy. In essence, therefore, the plaintiff avers four

causes of action. First, he contends he was terminated because of an actual disability in violation of the ADA and the ICRA. Second, he argues the defendant's failure to accommodate his disability violated both the ADA and the ICRA. Third, he maintains that the defendant regarded him as disabled and illegally discharged him because of this perceived disability in violation of the ADA and the ICRA. And fourth, the plaintiff contends he was discharged in retaliation for filing a workers' compensation claim in violation of Iowa public policy.[1]

Subject matter jurisdiction over the federal claims is proper pursuant to 28 U.S.C. § 1331 (federal question) and 42 U.S.C. § 12117(a) (referencing powers and remedies of 42 U.S.C. § 2000e–5, which, in turn, provides for original jurisdiction of claims under Title VII in the United States district courts). The court has jurisdiction over the state law claims alleging violations of the ICRA and public policy under 28 U.S.C. § 1367(a), which confers "supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

---

1. The court reads the plaintiff's complaint as averring a discharge in violation of public policy for filing a workers' compensation claim. Yet, the plaintiff's Statement of Uncontroverted Facts appears to be conflating this claim into one of discharge in violation of public policy for terminating the plaintiff because of absenteeism occasioned by a work-related injury. However, this claim is distinct from a claim of wrongful discharge for pursuing workers' compensation benefits, and Iowa courts do not recognize it as a viable cause of action, because dismissing an employee for absenteeism associated with a work-related injury is not a violation of Iowa public policy. E.g., Admire v. Cherokee County, 2000 WL 766157, at *2 (Iowa Ct.App. June 14, 2000) ("[I]t is not a violation of Iowa public policy to terminate the employment of an employee for absenteeism due to work-related injuries."); Weinzetl v. Ruan Single Source Transp. Co., 587 N.W.2d 809, 812–13 (Iowa Ct.App.1998) (terminations for absenteeism due to work-related injuries do not violate public policy in Iowa).

On October 1, 2001, the defendant moved for summary judgment. The defendant argues it discharged the plaintiff for a legitimate, nondiscriminatory reason, i.e., for excessive absenteeism. After a lengthy extension was granted, the plaintiff resisted the defendant's motion. Although the plaintiff does not address whether he was actually disabled in his brief, his Resistance To Motion For Summary Judgment reveals that he is resisting the defendant's motion on the ground there exist genuine issues of material fact regarding (1) whether plaintiff had a qualifying disability; (2) whether the defendant perceived the plaintiff as having a disability; and (3) whether the defendant retaliated against the plaintiff for suffering a work-related injury and pursuing workers' compensation benefits. Neither party has addressed the plaintiff's failure to accommodate claims.[2] This case is scheduled for a jury trial on March 11, 2002.

### B. Disputed And Undisputed Facts

Although the court will not attempt an exhaustive discussion of the undisputed and disputed facts presented by the record in this case, some discussion of the factual background is required to contextualize Brown's claims and the parties' arguments for and against summary judgment. Those facts include a synopsis of the nature of Farmland's business, Brown's employment with Farmland, and the circumstances under which Brown was terminated from that employment.

The parties have conducted extensive and thorough discovery, and the undisputed facts are refreshingly well-documented. Farmland operates a pork slaughter and meat processing plant in Denison, Iowa. The plaintiff began working for Farmland as a production worker on the loading docks on July 2, 1999. Farmland's employee relations are governed by a labor contract, and new hires are subject to a forty-five working day probationary period before being offered regular employment. Probationary employees' attendance is monitored according to Farmland's attendance policy for all regular, full-time employees, which utilizes a points system. However, although points are assessed in the same manner for regular and probationary employees, Farmland contends it does not apply the points system to probationary employees. Instead, Farmland maintains that it informs new hires that attendance is critical and that a single absence during an employee's probationary period can lead to discharge. Farmland adamantly argues that its probationary attendance policy gives broad discretion to the employer, because it is intended to help Farmland evaluate whether the employee will be reliable if hired as a regular employee.

On July 14, 1999, after only a week and one-half on the job, Brown suffered a crush injury to his foot that required medical attention. This injury resulted when plaintiff's foot became stuck between a wall and a "mule," which is also known as a pallet jack or a forklift. The plaintiff sought medical attention from the company nurse, who referred the plaintiff to Dr. John Ingram. Dr. Ingram diagnosed the plaintiff as having a fractured foot. Dr. Ingram provided Brown with an air cast

**2.** Neither party requested oral arguments on this motion, although both parties submitted thorough and well-researched briefs. The plaintiff was represented by Dennis M. McElwain of Smith & McElwain, Sioux City, Iowa. The defendant was represented by Eric W. Smith and Brent N. Coverdale (both admitted *pro hac vice*) of Shook, Hardy & Bacon, L.L.P., Kansas City, Missouri. Local counsel for defendant was Michael J. Frey of Hellige, Lundberg, Meis, Erickson & Frey of Sioux City, Iowa.

splint and instructed him to use crutches. Dr. Ingram also placed restrictions on Brown's working conditions, instructing him to perform sitting duty tasks. Farmland assigned Brown to work in the lab while his injury prevented him from his regular duties. In fact, Farmland complied with Brown's restrictions "100 percent." Defendant's App., Tab 1, at 23 (Brown Depo. pg. 122, 1. 6). Moreover, Brown filed for and received workers' compensation benefits for this injury.

On a follow-up visit on July 19, 1999, Dr. Ingram advised the plaintiff to continue with his sitting duty at work. Light duty restrictions continued until August 27, 1999, when Dr. Ingram advised that the plaintiff's work duties could be liberalized, and he established a schedule with increasing regular duty that would have resulted in total regular duty within approximately one month. However, when the plaintiff returned to work after his August 27 appointment with Dr. Ingram, Farmland advised Brown that he was being terminated because of excessive absenteeism. Brown contends that, at the time of his termination, the Human Resources Director, Denise Baldwin, showed obvious frustration at his continued restrictions.

Farmland and Brown do not dispute the days that Brown either arrived late at work or called in sick. Instead, their dispute centers on whether Farmland should have counted these absences against Brown and whether Farmland treated Brown harshly because of his injury. Brown argues that most of his absences were related to his injury and, pursuant to what Brown alleges to be Farmland's attendance policy, should not have been counted against him. He contends that the absences and Brown's tardy that were unrelated to his injury did not rise to the level of "excessive absenteeism" warranting termination. Consequently, Brown

contends that Farmland's assertion that it discharged Brown because of his poor attendance is nothing more than a pretext for unlawful discrimination. Farmland counters this argument by referring to its purportedly strict attendance policy for probationary employees, which provides that "if [new hires] have an attendance problem during [their] probationary period, [their] employment will be terminated." Plaintiff's App. Tab 5, at 15.

The absences in question occurred on July 16, July 20, August 5, and August 26 of 1999. In addition, Brown was approximately three hours late for work on August 13, 1999. It is uncontroverted that Brown did not have a doctor's excuse for any of these absences. Nevertheless, he asserts that the plant nurse advised him that a doctor's excuse was unnecessary for his July 16 absence and that management personnel erroneously informed him that his August 26 absence to attend a doctor's appointment with his wife was excused.

Brown was also excused for medical appointments on several other occasions. However, Farmland asserts that, under its attendance policy, these absences were not included when it decided to terminate Brown. The other excused absences for doctor's appointments occurred on the afternoon of July 14 (the day of Brown's injury), July 29, August 3, August 11, and August 27 of 1999. While Brown acknowledges that he was not formally assessed a penalty for these absences, he argues that the cost and inconvenience of these absences to Farmland figured prominently into Farmland's decision to terminate him.

Under Farmland's attendance policy, a predetermined number of points is given for each unexcused absence or tardy, depending upon the type of absence and the amount of forewarning provided the employer. Brown's attendance sheet shows that as of August 14, 1999, Brown had

accumulated four points. Furthermore, Brown contends that the decision to terminate him was based on his attendance through August 13, 1999. Therefore, he maintains that his August 26, 1999 absence could not have been figured into Farmland's decision-making process.[3] Moreover, Brown asserts that two of his attendance points—namely, those which resulted from his July 16 and July 20 absences—were improperly assessed against him because they were connected to his work-related injury.

Farmland has a code to reflect on each employee's attendance calendar the reason for the employee's absence. Brown's attendance calendar for July 16 and July 20 indicates he was out "sick," and does not reflect his absences were related to his injury. Nevertheless, on the Iowa Workforce Development "Fact Finding Worksheet for Misconduct," in response to the plaintiff's assertion that all absences were connected to his foot injury or FMLA leave, Farmland stated "[h]is absences for his foot were 7–16–99 & 7–20–99 & he was on light duty with office work."[4] Plaintiff's App. Tab 20, at 77.

## II. DISCUSSION

### A. Standards For Summary Judgment

This court has considered in some detail the standards applicable to motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure in a number of prior decisions. *See, e.g., Swanson v. Van Otterloo*, 993 F.Supp. 1224, 1230–31 (N.D.Iowa 1998); *Dirks v. J.C. Robinson Seed Co.*, 980 F.Supp. 1303,

1305–07 (N.D.Iowa 1997); *Laird v. Stilwill*, 969 F.Supp. 1167, 1172–74 (N.D.Iowa 1997); *Rural Water Sys. # 1 v. City of Sioux Ctr.*, 967 F.Supp. 1483, 1499–1501 (N.D.Iowa 1997), *aff'd in pertinent part*, 202 F.3d 1035 (8th Cir.), *cert. denied*, 531 U.S. 820, 121 S.Ct. 61, 148 L.Ed.2d 28 (2000); *Tralon Corp. v. Cedarapids, Inc.*, 966 F.Supp. 812, 817–18 (N.D.Iowa 1997), *aff'd*, 205 F.3d 1347 (8th Cir.2000) (Table op.); *Security State Bank v. Firstar Bank Milwaukee, N.A.*, 965 F.Supp. 1237, 1239–40 (N.D.Iowa 1997); *Lockhart v. Cedar Rapids Cmty. Sch. Dist.*, 963 F.Supp. 805 (N.D.Iowa 1997). The essentials of these standards for present purposes are as follows.

### 1. Requirements of Rule 56

Rule 56 itself provides, in pertinent part:

Rule 56. Summary Judgment

. . . .

(b) For Defending Party. A party against whom a claim . . . is asserted . . . may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon. . . . *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

Fed.R.Civ.P. 56(a)–(c) (emphasis added).

Applying these standards, the trial judge's function at the summary judgment

---

**3.** On August 26, 1999, Brown accompanied his wife, who was eight months pregnant at the time, to her doctor's appointment under the mistaken belief that he was covered by the Family Medical Leave Act. Brown was not covered by the Act, but he asserts that he was

given permission and told that the Act covered his absence.

**4.** The Iowa Workforce Development worksheet was completed in connection with Brown's claim for unemployment benefits, which Farmland contested.

stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376–77 (8th Cir.1996); *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir.1990). An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman*, 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). As to whether a factual dispute is "material," the Supreme Court has explained, "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *accord Rouse v. Benson*, 193 F.3d 936, 939 (8th Cir. 1999); *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir.1995); *Hartnagel*, 953 F.2d at 394.

### 2. *The parties' burdens*

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Rose–Maston v. NME Hospitals, Inc.*, 133 F.3d 1104, 1107 (8th Cir.1998); *Reed v. Woodruff County*, 7 F.3d 808, 810 (8th Cir.1993). "When a moving party has carried its burden under Rule 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. Instead, the party opposing summary judgment is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, an-

swers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Rabushka ex rel. United States v. Crane Co.*, 122 F.3d 559, 562 (8th Cir.1997), *cert. denied*, 523 U.S. 1040, 118 S.Ct. 1336, 140 L.Ed.2d 498 (1998); *McLaughlin v. Esselte Pendaflex Corp.*, 50 F.3d 507, 511 (8th Cir.1995). If a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548; *In re Temporomandibular Joint (TMJ) Implants Prod.Liab.Litig.*, 113 F.3d 1484, 1492 (8th Cir.1997). In reviewing the record, the court must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348; *Quick*, 90 F.3d at 1377 (same).

### 3. *Summary judgment in employment discrimination cases*

■ Because this is an employment discrimination case, it is well to remember that the Eighth Circuit Court of Appeals has cautioned that "summary judgment should seldom be used in employment-discrimination cases." *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir.1994) (citing *Johnson v. Minnesota Historical Soc'y*, 931 F.2d 1239, 1244 (8th Cir.1991); *Hillebrand v. M–Tron Indus., Inc.*, 827 F.2d 363, 364 (8th Cir.1987), *cert. denied*, 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989)); *see also Snow v. Ridgeview Medical Ctr.*, 128 F.3d 1201, 1205 (8th Cir.1997) (citing *Crawford*); *Helfter v. United Parcel Serv., Inc.*, 115 F.3d 613, 615 (8th Cir. 1997) (quoting *Crawford*); *Chock v. North-*

*west Airlines, Inc.*, 113 F.3d 861, 862 (8th Cir.1997) ("We must also keep in mind, as our court has previously cautioned, that summary judgment should be used sparingly in employment discrimination cases," citing *Crawford*); *Smith v. St. Louis Univ.*, 109 F.3d 1261, 1264 (8th Cir.1997) (quoting *Crawford*); *Hardin v. Hussmann Corp.*, 45 F.3d 262, 264 (8th Cir.1995) ("[S]ummary judgments should only be used sparingly in employment discrimination cases.") (citing *Haglof v. Northwest Rehabilitation, Inc.*, 910 F.2d 492, 495 (8th Cir.1990); and *Hillebrand*, 827 F.2d at 364). Summary judgment is appropriate in employment discrimination cases only in "those rare instances where there is no dispute of fact and where there exists only one conclusion." *Johnson*, 931 F.2d at 1244; *see also Webb v. St. Louis Post–Dispatch*, 51 F.3d 147, 148 (8th Cir.1995) (quoting *Johnson*, 931 F.2d at 1244); *Crawford*, 37 F.3d at 1341 (quoting *Johnson*, 931 F.2d at 1244). To put it another way, "[b]ecause discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant." *Crawford*, 37 F.3d at 1341 (holding that there was a genuine issue of material fact precluding summary judgment); *accord Snow*, 128 F.3d at 1205 ("Because discrimination cases often turn on inferences rather than on direct evidence, we are particularly deferential to the nonmovant.") (citing *Crawford*, 37 F.3d at 1341); *Webb v. Garelick Mfg. Co.*, 94 F.3d 484, 486 (8th Cir.1996) (citing *Crawford*, 37 F.3d at 1341); *Wooten v. Farmland Foods*, 58 F.3d 382, 385 (8th Cir.1995)

(quoting *Crawford*, 37 F.3d at 1341); *Johnson*, 931 F.2d at 1244.

■ Nevertheless, not long ago, the Eighth Circuit Court of Appeals also observed that "[a]lthough summary judgment should be used sparingly in the context of employment discrimination cases, *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir.1994), the plaintiff's evidence must go beyond the establishment of a prima facie case to support a reasonable inference regarding the alleged illicit reason for the defendant's action." *Landon v. Northwest Airlines, Inc.*, 72 F.3d 620, 624 (8th Cir.1995) (citing *Reich v. Hoy Shoe Co.*, 32 F.3d 361, 365 (8th Cir.1994)); *accord Kiel v. Select Artificials Inc.*, 169 F.3d 1131, 1134 (8th Cir.) (observing that the burden-shifting framework of *McDonnell Douglas* must be used to determine whether summary judgment is appropriate), *cert. denied*, 528 U.S. 818, 120 S.Ct. 59, 145 L.Ed.2d 51 (1999). More recently, in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), the Supreme Court reiterated that " '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.' " *Reeves*, 530 U.S. at 142, 120 S.Ct. 2097 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).[5] Thus, what the plaintiff's evidence must show, to avoid summary judgment or judgment as a matter of law, is " '1, that the stated reasons were not the real reasons for [the plaintiff's] discharge; and 2, that age [or race, or sex, or other prohibited] discrimination was the real reason for [the plain-

---

**5.** In *Reeves*, the Supreme Court was considering a motion for judgment as a matter of law after a jury trial, but the Supreme Court also reiterated that "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the

inquiry under each is the same.' " *Reeves*, 530 U.S. at 150, 120 S.Ct. 2097 (quoting *Liberty Lobby, Inc.*, 477 U.S. at 250–51, 106 S.Ct. 2505). Therefore, the standards articulated in *Reeves* are applicable to the present motion for summary judgment.

tiff's] discharge." *Id.* at 153, 120 S.Ct. 2097 (quoting the district court's jury instructions as properly stating the law). The Supreme Court clarified in *Reeves* that, to meet this burden, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* at 148, 120 S.Ct. 2097. The court will apply these standards to Farmland's motion for summary judgment, addressing each of Brown's claims in turn.

### B. Brown's Disability Claims

■ As a preliminary matter, it should be noted that in considering Brown's discrimination claims, the court will generally make no distinction between claims based on federal law and comparable claims based on state law. This is appropriate because the Iowa Supreme Court has recognized that federal precedent is applicable to discrimination claims under the ICRA, IOWA CODE CH. 216. *See Fuller v. Iowa Dep't of Human Servs.,* 576 N.W.2d 324, 329 (Iowa 1998) (recognizing that Chapter 216's prohibition on disability discrimination is the state-law "counterpart" to the ADA, and that, "[i]n considering a disability discrimination claim brought under Iowa Code chapter 216, we look to the ADA and cases interpreting its language. We also consider the underlying federal regulations established by the Equal Employment Opportunity Commission (hereinafter 'EEOC'), the agency responsible for enforcing the ADA.") (internal citations omitted); *cf. Vivian v. Madison,* 601 N.W.2d 872, 873 (Iowa 1999) ("The ICRA was modeled after Title VII of the United States Civil Rights Act"). Iowa courts, therefore, traditionally turn to federal law for guidance in evaluating the ICRA. *King v. Iowa Civil Rights Comm'n,* 334 N.W.2d 598, 601 (Iowa 1983). Federal law, however-

er, is not controlling. Iowa courts look simply to the analytical framework utilized by the federal courts in assessing federal law, and federal law should not substitute the language of the federal statutes for the clear words of the ICRA. *Hulme v. Barrett,* 449 N.W.2d 629, 631 (Iowa 1989); *accord Board of Supervisors of Buchanan County v. Iowa Civil Rights Comm'n,* 584 N.W.2d 252, 256 (Iowa 1998) ("In deciding gender discrimination disputes, we adhere to the Title VII analytical framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668, 677–79 (1973). *See Hy–Vee Food Stores, Inc. v. Iowa Civil Rights Comm'n,* 453 N.W.2d 512, 516 (Iowa 1990).")

■ The ADA affords protection from discrimination to any "qualified individual with a disability." 42 U.S.C. § 12112(a). "A plaintiff who raises a claim of disability discrimination bears the initial burden of establishing a *prima facie* case." *Lajeunesse v. Great Atlantic & Pac. Tea Co.,* 160 F.Supp.2d 324, 330 (D.Conn.2001) (citing *Ryan v. Grae & Rybicki, P.C.,* 135 F.3d 867, 869 (2d Cir.1998); *Wernick v. Federal Reserve Bank,* 91 F.3d 379, 383 (2d Cir.1996)). To establish this *prima facie* case of discrimination under the ADA and under the ICRA, Brown must show (1) that he has a disability within the meaning of the ADA, (2) that he is qualified to perform the essential functions of his job, with or without reasonable accommodation, and (3) that he suffered an adverse employment action because of his disability. *Cooper v. Olin Corp., Winchester Div.,* 246 F.3d 1083, 1087 (8th Cir.2001) (citing *Kiel v. Select Artificials, Inc.,* 169 F.3d 1131, 1135 (8th Cir.1999) (en banc)); *Heaser v. Toro Co.,* 247 F.3d 826, 830 (8th Cir.2001); *Maziarka v. Mills Fleet Farm, Inc.,* 245 F.3d 675, 678 (8th Cir.2001); *Treanor v. MCI Telecomm. Corp.,* 200 F.3d 570, 574

(8th Cir.2000); *Cravens v. Blue Cross & Blue Shield,* 214 F.3d 1011, 1016 (8th Cir. 2000).

■ "The term 'disability' means, with respect to an individual—(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C § 12102(2); *accord Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 478, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999) (interpreting ADA as requiring actual, and not potential, limitation in order to establish disability); *Greer v. Emerson Elec. Co.,* 185 F.3d 917, 921 (8th Cir.1999) ("A plaintiff may prove disability by showing that she [or he] (1) has a disability as defined under the ADA; (2) suffers from a history of such a disability; or (3) is perceived by her employer as having such a disability.") (citing 42 U.S.C. § 12102(2)(A)–(C)). The ADA further defines discrimination to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such [employer]...." 42 U.S.C. § 12112(b)(5)(A). The proof necessary for discrimination cases is flexible and varies with the specific facts of each case. *Young v. Warner–Jenkinson Co., Inc.,* 152 F.3d 1018, 1022 (8th Cir.1998). Here, Brown has set forth claims of disability discrimi-

nation against Farmland based on subsections (A) (actual disability), (C) (perceived disability), and failure-to-accommodate.

### 1. Actual disability claim: 42 U.S.C § 12102(2)(A)

■ As stated, a plaintiff's *prima facie* case of disability discrimination includes a showing that the plaintiff is disabled within the meaning of the ADA. *See, e.g., Webner v. Titan Distribution, Inc.,* 267 F.3d 828, 833 (8th Cir.2001) ("A party seeking relief under the ADA must establish by a preponderance of the evidence that he (1) is disabled within the meaning of the act; (2) is qualified to perform the essential functions of his job with or without a reasonable accommodation; and (3) was terminated because of his disability.") (citing *Aucutt v. Six Flags Over Mid–Am., Inc.,* 85 F.3d 1311, 1318 (8th Cir.1996)); *Cooper,* 246 F.3d at 1087 (same). "Disability is defined as 'a physical or mental impairment that substantially ... limits one or more of the plaintiff's major life activities.'" *Greer,* 185 F.3d at 921 (quoting *Snow,* 128 F.3d at 1206). Guidelines promulgated by the EEOC delineate several factors to assist in determining whether a disability falls within the scope of the protections afforded by the ADA.[6] These factors include "the nature and severity of the impairment, the duration or expected duration of the impairment, and the long-term impact resulting from the impairment." *Id.* (citing 29 C.F.R. § 1630.2(j)(2)). Furthermore, the Supreme Court has articulated a three-step

---

6. In *Albertson's, Inc. v. Kirkingburg,* 527 U.S. 555, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999), the United States Supreme Court assumed that the EEOC's interpretive guidelines were valid. *Albertson's,* 527 U.S. at 563 n. 10, 119 S.Ct. 2162. The Court stated that "for the purposes of this case, we assume, without deciding, that such regulations are valid, and we have no occasion to decide what level of

deference, if any, they are due, *see Sutton v. United Air Lines, Inc.,* 527 U.S., at 479–480, 119 S.Ct. 2139, 144 L.Ed.2d 450." *Id.* Likewise in this case, the parties have not questioned the validity of the EEOC guidelines. In fact, both parties rely extensively on these guidelines in support of their arguments. Accordingly, this court, too, assumes the regulations are valid.

process for determining whether a plaintiff has a disability under subsection A of 42 U.S.C. § 12102(2). *See Bragdon v. Abbott*, 524 U.S. 624, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998) (concluding HIV infection is a "disability" under the ADA). "The first step in the inquiry under subsection (A) requires [the court] to determine whether [the plaintiff's] condition constituted a physical impairment." *Id.* at 632, 118 S.Ct. 2196. Second, the court must identify the activities that the plaintiff claims are impaired and determine whether they are "major life activities." *Id.* "The final element of the disability definition in subsection (A) is whether [plaintiff's] physical impairment was a substantial limit on the major life activity she [or he] asserts." *Id.* at 638, 118 S.Ct. 2196.

■ In this case, Farmland argues that Brown's foot injury is not a disability within the meaning of the ADA, because the injury was temporary and did not result in any long-term symptoms. Consequently, Farmland contends that Brown is unable to establish the first element of his *prima facie* case of disability discrimination. By his own admission, Brown's injury has not resulted in any lasting consequences and the only activities it has affected are his ability to wrestle with his children and to play basketball. Def.'s App. Tab 1, at 25 (Brown depo. 11. 13–17). Further, Brown does not contend that he can no longer wrestle or play ball; instead, he asserts that he engages in these activities infrequently because he is concerned about the possibility of reinjuring his ankle. Def.'s App. Tab 1, at 25 (Brown depo. 1. 19). The medical reports in this case indicate that Brown's injury has healed completely and has left him with no discernable symptoms.

"ADA regulations, as well as ADA interpretive guidance, make clear that temporary, minor injuries do not 'substantially limit' a person's major life activities." *Hutchinson v. United Parcel Serv., Inc.*, 883 F.Supp. 379, 395–96 (N.D.Iowa 1995) (citing 29 C.F.R. §§ 1630.2(j), 1630 App., at 407). In *Hutchinson*, this court granted the defendant's motion for summary judgment on the ground the plaintiff failed to establish she was disabled within the meaning of the Act. *Id.* at 395. In that case, the plaintiff was injured on three separate occasions and sustained a knee injury, an upper back and left shoulder injury, and the reinjury of her left shoulder. *Id.* at 385. This court found that "[a]lthough Hutchinson's injuries were not 'minor,' the medical record demonstrates that they were temporary, and that any permanent impairment is only slight." *Id.* at 396. Furthermore, the court observed that any lingering symptoms from the plaintiff's injuries did not disqualify her from a wide range of jobs. *Id.* This fact was of consequence to the court's determination that the plaintiff was not "disabled" because her ability to perform work similar to that formerly required of her by UPS was "proof that she has not been limited in this major life activity." *Id.*

The facts of *Hutchinson* are strikingly similar to the facts of the case at hand. Like Hutchinson's injuries, Brown's injuries were temporary, and the medical record reveals complete recovery with no permanent work restrictions. In addition, Brown was released from his medical restrictions to return to full duty in September of 1999 and is currently employed in a similar position. Brown has offered absolutely no argument with respect to any substantial limitations on his major life activities that his injury has caused. Because he bears the burden of proof and has not attempted to carry it, the court will not engage in conjecture, especially in light of the undisputed medical evidence and Brown's own testimony, which both indi-

cate that Brown's foot injury has not caused him any lasting medical problems. On this point, there is no genuine issue of material fact—the facts unequivocally indicate that Brown's injury was temporary and expected to heal fully.

■ The court, therefore, finds that Brown is not disabled within the meaning of 42 U.S.C. § 12102(2)(A), because his injury was temporary and did not result in any permanent impairment. *Accord Halperin v. Abacus Tech. Corp.,* 128 F.3d 191, 199–200 (4th Cir.1997) ("Based on the [EEOC] factors, it is evident that the term 'disability' does not include temporary medical conditions..... Applying the protections of the ADA to temporary impairments ... would work a significant expansion of the Act. The ADA simply was not designed to protect the public from all adverse effects of ill-health and misfortune.... Extending the statutory protections available under the ADA to individuals with broken bones, sprained joints, sore muscles, infectious diseases, or other ailments that temporarily limit an individual's ability to work would trivialize this lofty objective.") (internal citations omitted); *Lajeunesse,* 160 F.Supp.2d at 332 ("The plaintiff's condition improved after his surgery and much of the discomfort to which he refers was temporary. '[T]emporary injuries ... without substantial limitations and permanent effects[ ] do not warrant the protections of the ADA.'") (quoting *Stronkowski v. St. Vincent's Med. Ctr.,* 1996 WL 684407, at *7 (D.Conn. Aug. 1, 1996)). What is more, Brown appears to have abandoned his actual disability claim by no more than summarily stating Farmland's motion should be denied. The court agrees with Farmland's assertion that, as a result of Brown's failure to brief his argument concerning his actual disability claim, Brown has abandoned this claim. *Cf. Posters 'N' Things, Ltd. v. United*

*States,* 511 U.S. 513, 527, 114 S.Ct. 1747, 128 L.Ed.2d 539 (1994) (issues raised by *habeas corpus* petitioner in original petition but not briefed are deemed abandoned) (citing *Russell v. United States,* 369 U.S. 749, 754, n. 7, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962)). In any event, Brown cannot establish the threshold element of his *prima facie* case of actual disability discrimination, and the court will grant the defendant's motion on this claim.

### 2. *Perceived disability claim: 42 U.S.C. § 12102(2)(C)*

■ Even if Brown does not have a qualifying disability, he could still prevail on Count II of his complaint, which avers discrimination based on a perceived disability under 42 U.S.C. § 12102(2)(C). However, to survive this motion for summary judgment on his perceived disability claim, Brown must show, or create a genuine issue of material fact, as to whether he is "disabled" within the meaning of subsection C:

> There are two apparent ways in which individuals may fall within this statutory definition: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. In both cases, it is necessary that a covered entity entertain misperceptions about the individual—it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting.

*Sutton,* 527 U.S. at 488–89, 119 S.Ct. 2139; *accord Costello v. Mitchell Public Sch. Dist. 79,* 266 F.3d 916, 924 (8th Cir. 2001) ("To be regarded as disabled under

the ADA, an individual must show that she has an impairment that 'does not substantially limit major life activities but is treated by a covered entity as constituting such limitation.'") (quoting 29 C.F.R. § 1630.2(1)(1); and citing *Cody v. CIGNA Healthcare, Inc.*, 139 F.3d 595, 598–99 (8th Cir.1998)); *accord Brunko v. Mercy Hosp.*, 260 F.3d 939 (8th Cir.2001) ("To be regarded as disabled under the ADA, Brunko would have to show that Mercy mistakenly believed that she had a physical impairment that substantially limited one or more major life activities, or Mercy mistakenly believed that she had an actual, nonlimiting impairment which substantially limited one or more major life activities.") (citing *Sutton*, 527 U.S. at 489, 119 S.Ct. 2139). Consequently, the analysis is the same under both the actually disabled and regarded as disabled claims. *Kellogg v. Union Pac. R. Co.*, 233 F.3d 1083, 1089 (8th Cir.2000) ("Thus, our analysis is the same as under an actually disabled claim, but the question here is whether Union Pacific regarded Kellogg as precluded from more than a particular job.") (citing *Murphy*, 527 U.S. at 521–22, 119 S.Ct. 2133; *Sutton*, 527 U.S. at 491–92, 119 S.Ct. 2139); *Kampouris v. St. Louis Symphony Soc.*, 210 F.3d 845, 848 (8th Cir.2000) ("As to his prima facie case of perceived disability discrimination under the ADA, Mr. Kampouris must show that the St. Louis Symphony Society regarded him as having an impairment that substantially limits a major life activity." *Roberts v. Unidynamics Corp.*, 126 F.3d 1088, 1092 (8th Cir.1997), *cert. denied*, 523 U.S. 1106, 118 S.Ct. 1676, 140 L.Ed.2d 814 (1998). An individual is regarded as having a substantially limiting impairment when others treat that individual as having such an impairment. *Id.* Additionally, Mr. Kampouris must show that he was able to perform the essential functions of his job, and that he suffered adverse employment action because of his perceived disability. *See Treanor v. MCI Telecommunications Corp.*, 200 F.3d 570, 574 (8th Cir.2000) (actual disability case defining the 'qualification' element in terms of ability to perform the essential functions of the claimant's job, either with or without reasonable accommodation)) (Bennett, J., sitting by designation, dissenting).

In *Wooten v. Farmland Foods*, the Eighth Circuit Court of Appeals examined this subsection of the ADA:

> Read in conjunction with subsection (A), subsection (C) prescribes that a person is considered disabled for purposes of the ADA if that person is "regarded as having" an impairment that "substantially limits" a "major life activit[y]." 42 U.S.C. § 12102(C). The limiting adjectives "substantially" and "major" indicate that the perceived "impairment must be a significant one." *Byrne v. Board of Educ., Sch. of West Allis–West Milwaukee*, 979 F.2d 560, 564 (7th Cir. 1992). A person is "regarded as having" an impairment that substantially limits the person's major life activities when other people treat that person as having a substantially limiting impairment. *See* 29 C.F.R. § 1630.2(j)(*l*)(3). The focus is on the impairment's effect upon the attitudes of others. *Byrne*, 979 F.2d at 566. This provision is intended to combat the effect of "archaic attitudes," erroneous perceptions, and myths that work to the disadvantage of persons with or regarded as having disabilities. *See School Bd. of Nassau County v. Arline*, 480 U.S. 273, 279 & 285, 107 S.Ct. 1123, 1126 & 1129, 94 L.Ed.2d 307 (1987).

*Wooten*, 58 F.3d at 385; *accord Gerdes*, 949 F.Supp. at 1396 (quoting *Wooten*, 58 F.3d at 385).

Moreover, the EEOC regulations provide the following:

(*l*) Is regarded as having such an impairment means:

(1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;

(2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or

(3) Has none of the impairments defined [above] but is treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. § 1630.2(*l*)(1)–(3); *accord Runnebaum v. NationsBank of Maryland, N.A.,* 95 F.3d 1285, 1289 (4th Cir.1996) ("The EEOC defines the term 'regarded as having [a disability]' to include persons who have 'a physical or mental impairment that substantially limits major life activities only as a result of the attitudes *of others* toward such impairment.'") (quoting 29 C.F.R. § 1630.2(a)(2)) (emphasis provided by Fourth Circuit), *aff'd on rehearing,* 123 F.3d 156 (4th Cir.1997) (en banc), *overruled on other grounds by Bragdon v. Abbott,* 524 U.S. 624, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998); *Aucutt,* 85 F.3d at 1319–20 (looking to EEOC guidelines for guidance and quoting this definitional section).

■■■ The Eighth Circuit has recently illuminated this area of the ADA and explains:

> To be regarded as substantially limited in the life activity of working, a plaintiff must be regarded as "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i); *Murphy v. United Parcel Serv., Inc.,* 527 U.S. 516, 523, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999) (ap-

plying section 1630.2(j)(3) factors to "regarded as" claim). Inability to perform one particular job does not constitute a substantial limitation on working. *Id.* A plaintiff must show that because of her impairment she has suffered a significant reduction in meaningful employment opportunities. *Webb v. Garelick Mfg. Co.,* 94 F.3d 484, 488 (8th Cir.1996). Factors to be considered in determining whether a plaintiff is restricted from a class of jobs include the person's expertise, background, and job expectations. *Id.* at 487; 29 C.F.R. § 1630.2(j)(3)(ii); *Taylor v. Nimock's Oil Co.,* 214 F.3d 957, 960–61 (8th Cir.2000) (discussing factors such as geographical area, number of hours worked, and whether restrictions were temporary).

*Cooper,* 246 F.3d at 1089.

■■■ Brown's "regarded as" claim ultimately must fail because he has adduced no evidence indicating that Farmland perceived him as having an impairment that significantly restricted his ability to perform any major life activities. *See Murphy,* 527 U.S. at 524, 119 S.Ct. 2133 (concluding summary judgment is proper where ADA plaintiff fails to show that he is "regarded as unable to perform a class of jobs"); *Strippit,* 186 F.3d at 915 (stating that the test is not whether "defendant treated plaintiff adversely because of his or her feelings about the plaintiff's physical or mental impairment," but rather "whether the defendant treated plaintiff adversely because it regarded him as having an impairment *that substantially limits one or more major life activities*"). In fact, the record is bereft of any evidence that would indicate that Farmland perceived Brown as anything more than temporarily injured.

When Brown was given work restrictions after his injury, Farmland provided

Brown with light-duty, sit-down work in the laboratory pursuant to Dr. Ingram's instructions. Farmland did not intend that Brown remain in this make-shift position; it is undisputed that Brown, if he had not been terminated, would have eventually returned to regular duty work on the loading dock. Although Brown could not perform his regular duties while his injury was healing, full recovery was expected by both parties and, indeed, such recovery has occurred. Thus, Brown cannot show that "because of [his] impairment [he] has suffered a significant reduction in meaningful employment opportunities," *Cooper*, 246 F.3d at 1089 (citing *Garelick Mfg. Co.*, 94 F.3d at 488), nor can he show that Farmland treated his injury as substantially limiting his major life activities, because Farmland did not intend to restrict his duties indefinitely.

Brown contends a genuine issue of material fact exists as to whether Farmland regarded him as being unable to perform "his regular production work, or whether the employer considered Brown's temporary inability to perform his regular job a continuing liability with attendant increased workers' compensation costs." Plaintiff's Br. at 10. Although it is difficult to read this statement as setting forth an argument of a substantially limiting impairment, even if the court were to construe it as an allegation that Farmland regarded him as unable to perform his job, "[t]here is a distinction between being regarded as an individual unqualified for a particular job because of a limiting physical impairment and being regarded as 'disabled' within the meaning of the ADA." *Conant v. City of Hibbing*, 271 F.3d 782 (8th Cir.2001) (per curiam) (page references not yet available).

In *Conant*, the employer withdrew its offer of employment to the plaintiff after a doctor, in the course of a pre-employment physical, placed lifting restrictions on the plaintiff's ability to work. *Id.* The plaintiff initiated a lawsuit, claiming violations of the ADA. *Id.* The Eighth Circuit affirmed the district court's judgment, which granted summary judgment in favor of the employer on the ground the plaintiff failed to generate an issue of material fact with respect to whether the defendant perceived the plaintiff as disabled within the meaning of the ADA. *Id.*

The court reasoned that, because the lifting restriction at issue in *Conant* had repeatedly been held not to constitute a "disability," "[i]t logically follows ... that being regarded as having a limiting but not disabling restriction also cannot be a disability within the meaning of the ADA." *Id.* In this case, the evidence is clear and undisputed that Farmland considered Brown's restrictions to be temporary. As in *Conant*, it logically follows then that, because a temporary injury is not a "disability" and because Farmland considered the restrictions to be temporary, Farmland did not perceive Brown as being "disabled."

Moreover, "[t]o be regarded as substantially limited in the life activity of working, a plaintiff must be regarded as 'significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.'" *Cooper*, 246 F.3d at 1089 (quoting 29 C.F.R. § 1630.2(j)(3)(i); and citing *Murphy*, 527 U.S. at 523, 119 S.Ct. 2133, which applied section 1630.2(j)(3) factors to "regarded as" claim). It bears repeating that the plaintiff has set forth no evidence and, in fact, does not dispute that Farmland considered his injury to be temporary. Therefore, Farmland did not perceive Brown's injury as having reduced his ability to perform his regular duties, much less

a wide range of jobs. While Brown asserts that his injuries caused Farmland to perceive him as an increased liability in terms of workers' compensation costs, that argument is misguided, because it does not speak to whether Farmland mistakenly believed Brown was substantially limited in performing major life activities.

Because Brown has failed to generate a genuine issue of material fact as to the first element of the *prima facie* case of a perceived disability claim, the court will grant Farmland's motion for summary judgment on this claim. Not only is the record devoid of any evidence that Farmland considered Brown to be "disabled" within the meaning of the ADA, Brown has made very little effort to advance this claim, failing to do more than make a conclusory statement that a genuine issue of material fact exists. A plaintiff's burden at the summary judgment stage is not great, but the party opposing summary judgment must counter the movant's initial showing and designate "specific facts showing that there is a genuine issue for trial." *See* Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Rabushka,* 122 F.3d at 562; *McLaughlin,* 50 F.3d at 511. The opponent must make a sufficient showing of each of the essential elements of a claim if he or she will ultimately bear the burden of proof on that element at trial. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548; *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.,* 113 F.3d at 1492. Here, Brown has failed to carry this burden, and the court has no difficulty in concluding that summary judgment is appropriate on this claim.

### 3. *Failure-to-accommodate claim*

■ As an initial matter, the court notes that Brown asserted failure to accommodate claims under both his actual and perceived disability claims. However, Brown's failure-to-accommodate a perceived disability claim is not a viable cause of action. The Eighth Circuit has ruled that a perceived disability claimant is not entitled to reasonable accommodation. *Strippit,* 186 F.3d at 916–17. Therefore, the court will dismiss this claim.

■ In addition, although Farmland did not move for summary judgment on Brown's failure-to-accommodate claims, the court will also dismiss the failure-to-accommodate Brown's actual disability claim because the court has found no genuine issue of material fact exists as to whether Brown was "disabled" within the meaning of the ADA. He was not, and the threshold showing of a failure-to-accommodate claim requires the plaintiff be "disabled":

> Where an employee suffers from an actual disability (*i.e.,* an impairment that substantially limits a major life activity), the employer cannot terminate the employee on account of the disability without first making reasonable accommodations that would enable the employee to continue performing the essential functions of his job. Thus, *it is enough to make out a prima facie case of disability discrimination that an individual is actually disabled,* that he can perform the essential functions of his job with or without reasonable accommodations, and that his employer discriminated against him on account of his disability.

*Id.* at 916 (emphasis added).

### C. *Discharge In Violation Of Public Policy Claim*

■ Next, the court turns to Brown's claim that he was discharged in violation of public policy. Count IV of Brown's complaint alleges that he was terminated in retaliation for pursuing his rights under Iowa's workers' compensation laws. He cites *Springer v. Weeks & Leo Co.,* 429

N.W.2d 558, 560–61 (Iowa 1988), in support of his argument, which held that "it is the public policy of [Iowa] that an employee's right to seek the compensation which is granted by law for work-related injuries should not be interfered with regardless of the terms of the contract of hire." He further acknowledges that a case of retaliatory discharge involves a *prima facie* showing of "(1) engagement in a protected activity, (2) adverse employment action, and (3) a causal connection between the two." *Teachout v. Forest City Cmty. Sch. Dist.*, 584 N.W.2d 296, 299 (Iowa 1998).

### 1. Analytical framework

 Although the Iowa Supreme Court has not squarely addressed this issue, it appears to this court that a common-law retaliatory discharge claim is subject to a burden-shifting analysis.[7] *See Tullis v. Merrill*, 584 N.W.2d 236, 239 (Iowa 1998) (affirming jury verdict in favor of plaintiff on wrongful discharge claim in violation of public policy and stating that the plaintiff countered the defendant's legitimate reason for dismissal with evidence of pretext). This conclusion is logical because the elements of claims for termination in violation of public-policy and for statutory retaliatory discharge are nearly identical, differing only in the source of the protected activity, *i.e.*, common-law versus statutory. The Iowa Supreme Court clearly applies the burden-shifting analysis to statutory retaliation discharge claims, and, therefore, it is highly likely the court would apply this same analysis to common-law retaliatory discharge claims. *Compare Fitzgerald*, 613 N.W.2d at 281 (elements of discharge in violation of public policy are: "(1) engagement in a protected activity; (2) discharge; and (3) a causal connection between the conduct and the discharge") (citing *Teachout*, 584 N.W.2d at 299), *with City of Hampton v. Iowa Civil Rights Comm'n*, 554 N.W.2d 532, 536 (Iowa 1996) (applying burden-shifting analysis to retaliatory discharge claim and outlining elements as: "(1) involvement in statutorily protected activity, (2) adverse employment action, and (3) a causal connection between the two") (citing *Hulme v. Barrett*, 480 N.W.2d 40, 42 (Iowa 1992) (*Hulme II*)).

Furthermore, the Iowa Supreme Court has consistently sought guidance in its common-law retaliatory discharge cases from its decisions involving claims of statutory retaliation, which further demonstrates that the Iowa Supreme Court would analyze these distinct causes of action in a similar manner. *See generally Teachout*, 584 N.W.2d at 299, 301, 302 (citing *Hulme II* in support of elements of claim and for proposition that causation standard in common-law retaliatory discharge case is high and stating *City of Hampton* was helpful in analyzing causa-

---

**7.** In *Richards v. Farner–Bocken Co.*, 145 F.Supp.2d 978, 1007 (N.D.Iowa 2001), this court stated that "the Iowa Supreme Court has explained that a common-law claim of retaliation is ... subject to a burden-shifting analysis." However, upon further review, the court recognizes that it may have overstated the holdings of the Iowa Supreme Court decisions cited in support of this proposition. Those cases dealt with claims of statutory retaliation, and the Iowa Supreme Court has, in fact, not ruled directly on the question of whether common-law retaliation claims are subject to the *McDonnell Douglas* burden-shifting paradigm. *See City of Hampton*, 554 N.W.2d at 536 (holding discharge in retaliation for filing sex discrimination claim in violation of Iowa law is subject to burden-shifting analysis); *Yockey*, 540 N.W.2d at 422 (citing *Hulme I* and describing application of burden-shifting analysis to age discrimination claims but declining to rule on its application to common-law retaliation claims); *Hulme v. Barrett*, 449 N.W.2d 629, 633 (Iowa 1989) (*Hulme I*) (applying burden-shifting analysis to retaliation claim for filing age discrimination complaint).

tion element). What is more, Iowa district courts have also applied the burden-shifting analysis to common-law retaliatory discharge claims. *See, e.g., Motta v. Olsten Staffing Servs.*, 1996 WL 766793 (Iowa Dist. Nov. 20, 1996).

In *Yockey*, the plaintiff urged the Iowa Supreme Court to apply the shifting burden-of-proof analysis to her discharge in violation of public policy claim. *Yockey*, 540 N.W.2d at 422. However, the court ruled that, because the plaintiff had failed to make out a *prima facie* case on her common-law retaliatory discharge claim, "the case d[id] not provide a basis for [the court] to consider [the plaintiff's] contention concerning a shifting of the burden of proof." *Id.* Likewise, the cases cited by Farmland in support of its assertion that the burden-shifting analysis does not apply to Brown's claim are merely illustrations of cases in which the Iowa court has ruled that the plaintiffs failed to establish a *prima facie* case; thus, as in *Yockey*, the court's analysis did not advance to the stage at which a burden-shifting analysis would have been implicated. *Cf. Teachout*, 584 N.W.2d at 299 (finding plaintiff failed to generate a jury question on the issue of causation); *Phipps v. IASD Health Servs. Corp.*, 558 N.W.2d 198, 203 (Iowa 1997) (same).

Under this burden-shifting analysis, the plaintiff has the burden to establish a *prima facie* case of discrimination. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If the plaintiff carries this burden, a presumption of retaliation arises, and the burden of production then shifts to the defendant to come forward with a legitimate, lawful reason for its action. *See id.* If the defendant, in turn, meets this burden, the plaintiff, who at all times retains the burden of proving the elements of the claim, then has the burden to prove the employer's proffered reason is

pretextual. *See id.; accord Richards v. Farner–Bocken*, 145 F.Supp.2d 978, 1007 (N.D.Iowa 2001) (applying burden-shifting analysis to wrongful discharge in violation of public policy claim); *Fitzgerald*, 613 N.W.2d at 282 (describing elements of wrongful discharge claim and stating "to withstand summary judgment a plaintiff must not only satisfy the court on the public policy and jeopardy elements of the tort, but offer adequate evidence from which a lack of justification for termination can be inferred").

### 2. *Prong one: Protected activity*

■■■■■ Iowa law recognizes a common-law exception to the general rule of at-will employment when an employee's discharge is in clear violation of a well-established and well-defined public policy. *See, e.g., Fitzgerald*, 613 N.W.2d at 281 (outlining history of at-will employment doctrine and exceptions recognized in Iowa) (citing *French v. Foods, Inc.*, 495 N.W.2d 768, 769–71 (Iowa 1993) (employee handbook may create unilateral contract); *Springer*, 429 N.W.2d at 560 (narrow public policy exception adopted); *Abrisz v. Pulley Freight Lines, Inc.*, 270 N.W.2d 454, 455 (Iowa 1978) (first recognizing the possibility of public policy exception). In this case, Farmland and Brown agree that Brown made a claim for workers' compensation benefits in connection with his work-related injury, which is protected activity under *Springer* and its progeny). *See Springer*, 429 N.W.2d at 560; *Smith v. Smithway Motor Xpress, Inc.*, 464 N.W.2d 682, 686 (Iowa 1990); *Niblo v. Parr Mfg., Inc.*, 445 N.W.2d 351, 353 (Iowa 1989). Thus, there is no dispute as to the existence of the first element of Brown's discharge in violation of public policy claim.

### 3. *Prong two: Adverse employment action*

The next element of Brown's *prima facie* case of retaliatory discharge is undis-

puted: He was terminated. However, a plaintiff who alleges retaliatory discharge in violation of public policy must not only have engaged in protected conduct and have been terminated; his discharge must be causally connected to his participation in protected activity. *E.g., Fitzgerald,* 613 N.W.2d at 289. The crux of the factual issue in this case is whether Brown has established or generated a genuine issue of material fact with respect to the third prong of his *prima facie* case of wrongful discharge. Accordingly, the court will concentrate its attention on this last element.

### 4. Prong three: Causal connection

As stated, the final element of a *prima facie* case of wrongful discharge in violation of public policy is a showing that the protected conduct, here, Brown's filing of a workers' compensation claim, caused the employer to dismiss the plaintiff. *See id.* "The protected conduct must be the determinative factor in the decision to terminate the employee." *Id.* (citing *Teachout,* 584 N.W.2d at 300–01). "A factor is determinative if it is the reason that 'tips the scales decisively one way or the other,' even if it is not the predominant reason behind the employer's decision." *Teachout,* 584 N.W.2d at 302 (quoting *Smith v. Smithway Motor Xpress Inc.,* 464 N.W.2d at 686); *see also Sanford v. Meadow Gold Dairies, Inc.,* 534 N.W.2d 410, 412 (Iowa 1995) ("An essential element of the claim is a showing concerning the employer's specific motivation in firing; it must appear that the discharge was prompted by the filing of the workers' compensation claim."). While the causation standard is high, it generally "presents a question of fact. Thus, if there is a dispute over the conduct or the reasonable inferences to be drawn from the conduct, the jury must resolve the dispute." *Fitzgerald,* 613 N.W.2d at 289 (citing 2 HENRY H. PERRIT, JR., EMPLOYEE DISMISSAL LAW AND PRACTICE

§ 7.21, at 54 (4th ed.1998)). Further, in ruling on a motion for summary judgment, the court's role is not to determine whether the plaintiff will prevail at trial; the court merely must ascertain whether the plaintiff has generated genuine issues of material fact. *Cf. Quick,* 90 F.3d at 1376–77; *Johnson,* 906 F.2d at 1237.

Brown, of course, argues there are genuine issues of material fact concerning whether Farmland's decision to terminate him was because he filed for and received workers' compensation benefits. Brown's argument, however, centers on whether he has cast doubt on Farmland's stated reason for dismissing him. This argument, although well articulated, is misplaced, because without a showing of causation, which is an element of Brown's *prima facie* case, the "pretext" phase of the burden-shifting analysis is not implicated. Yet, Brown seeks to establish causation precisely by showing pretext. In support of his argument, he cites cases in other jurisdictions, which he asserts have held that a sufficient showing of pretext is enough to establish causation. *See, e.g., Flasza v. TNT Holland Motor Express, Inc.,* 159 F.R.D. 672 (N.D.Ill.1994) (denying summary judgment on discharge in violation of Illinois public policy and finding *prima facie* case established while merely discussing whether the plaintiff was the defendant's "employee" and pretext); *Overton v. Amerex Corp.,* 642 So.2d 450 (Ala.1994) (finding plaintiff established *prima facie* case by showing, *inter alia,* that she was terminated after filing a complaint).

It is the court's opinion that Brown has overstated the holdings of these cases; *Flasza* and *Overton* merely do not discuss the element of causation despite the courts' findings that it was established, which is a far cry from holding that pre-

text is sufficient to show causation. *See Flasza*, 159 F.R.D. at 680 (outlining *prima facie* case of common-law retaliatory discharge as including causal connection and denying defendant's motion for summary judgment on retaliatory discharge count but combining analysis of causation and pretext); *Overton*, 642 So.2d at 452–53 (outlining case of discharge in violation of Alabama public policy as including causation element but summarily stating "Overton presented evidence that, if believed, would make a *prima facie* case of retaliatory discharge"). Nevertheless, Brown has presented evidence other than pretext to show causation.

First, the timing of Brown's discharge is suspect. The parties do not dispute that Brown was terminated approximately one-half hour after returning to work from an appointment with Dr. Ingram and submitting his latest work restrictions to Farmland. Standing alone, this temporal component of Brown's evidence would be insufficient to establish causation at trial, but adverse employment action following so closely on the heels of protected activity is a significant factor in generating a genuine issue of material fact on the plaintiff's *prima facie* case of wrongful discharge in violation of public policy, even if it is not enough to prevail at trial. *Cf. Richards v. Farner–Bocken Co.*, 145 F.Supp.2d 978, 1007 (N.D.Iowa 2001) (requiring "something more" beyond temporal proximity to generate a genuine issue of material fact on causal element of claim of wrongful discharge but finding that evidence of pretext qualified as that "something more") (citing *Webner v. Titan Distrib., Inc.*, 101 F.Supp.2d 1215, 1230 (N.D.Iowa 2000), which held that five days between protected activity and adverse action was sufficient to establish a causal connection for purposes of a *prima facie* case of wrongful discharge, *aff'd in part, rev'd in part and remanded by*, 267 F.3d

828 (8th Cir.2001); and *Hansen v. Sioux By–Prods.*, 988 F.Supp. 1255, 1257–58 (N.D.Iowa 1997), which held that termination the same day that the plaintiff was injured at work and reported the injury satisfied the requirements of the *prima facie* case).

Second, Brown has presented evidence that Farmland more often terminates probationary workers who suffer work injuries and assert their workers' compensation rights than those who do not. Brown has attached numerous Farmland attendance calendars in an attempt to show Farmland's practice of discharging employees who file for workers' compensation benefits, while retaining those probationary employees with worse attendance records than Brown but who did not sustain work-related, compensable injuries.

Brown also offers the affidavits of two former Farmland probationary employees, Christopher Britt and David Nelson. The scenario outlined by Britt is probative of the causal element in Brown's case because the circumstances surrounding their terminations appear to be similar. In Britt's case, he sustained a work-related knee injury. His injury, like Brown's, appears to have been a temporary one. Like Brown, Britt was employed on the loading dock, and his treating physician placed him on light-duty after his injury. Plaintiff's App. Tab 4, at 13 (Britt Aff. at ¶ 5). According to Britt's attendance calendar, he missed work on two occasions unrelated to his treatment after sustaining his injury, once for "personal business" and once for "sickness." After returning to work from a doctor's appointment concerning his knee injury and after showing his supervisor his continued work restrictions, Farmland dismissed Britt. At the time of his dismissal, Britt had accumulated five attendance points. Brown had four.

The other former probationary loading dock employee whose affidavit Brown has submitted in support of his resistance is David Nelson. His attendance was clearly an issue before sustaining a work injury.[8] His performance evaluation, dated July 7, 1998, indicates that "Dave needs to be here every day and improve attendance." Plaintiff's App. Tab 8, at 42. Because of his absences, Farmland extended Nelson's probationary period. However, only a few days later on September 1, 1998, Nelson suffered a groin injury. Each of Nelson's absences after September 1, 1998 related to treatment for his work-related injury, which do not result in the assessment of attendance points. However, on September 10, 1998, Farmland dismissed Nelson for excessive absenteeism.

The circumstances surrounding Britt's and Nelson's terminations lend to an inference of retaliatory motive, which is the "something more" than temporal proximity that Brown has offered to generate a genuine issue of material fact on the causal element of his claim of wrongful discharge. Cf. Clarey v. K–Products, Inc., 514 N.W.2d 900, 903 (Iowa 1994) (evidence of employer's harassment of other employees who filed workers' compensation claims admissible to show motive). Furthermore, a perusal of the attendance calendars submitted shows that probationary employees are most often given an oral warning after accumulating five or six attendance points, which is consistent with the policy for full-time regular employees. Plaintiff's App. Tab 7, at 19–39. Brown and Nelson had only accumulated four at the time of their dismissals, while Britt had five. Farmland did not give Brown, Britt, or Nelson oral

warnings before dismissing them for excessive absenteeism. Of course, none of the calendars submitted that indicate oral warnings were given were those of loading dock employees. However, this evidence is sufficient to generate a genuine issue of material fact, which a trier of fact must resolve, not the court. See, e.g., Quick, 90 F.3d at 1376–77; Johnson, 906 F.2d at 1237.

On the present record, therefore, Brown has generated a genuine issue of material fact on whether his workers' compensation claim was the determinative factor in Farmland's decision to dismiss him, in violation of Iowa public policy. Having generated fact questions on his prima facie case of wrongful discharge, under the burden-shifting paradigm, the burden shifts to Farmland to articulate a legitimate reason for its decision to terminate Brown. Cf. Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133, 149, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (employing burden-shifting analysis and holding that prima facie case of discrimination and evidence of pretext may permit a finding of liability); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (establishing burden-shifting analytical framework where there is no direct evidence of discrimination); City of Hampton, 554 N.W.2d at 536 (describing burden-shifting analysis in retaliatory discharge claim, for filing civil rights complaint); Hulme I, 449 N.W.2d at 633 (same). Consequently, the court must examine whether Farmland has met its burden.

8. Farmland asserts that it learned Nelson's injury was not work-related before terminating him. However, it has offered no evidence other than its statement that Nelson's injury was work-related. Taking the evidence in the light most favorable to the non-moving party, the court will assume for purposes of this motion that Nelson indeed sustained a work-related injury, such as is asserted in his affidavit and is indicated on his attendance calendar.

#### 5. Farmland's stated legitimate reason for dismissing Brown

 Farmland is adamant in its assertion that its decision to terminate Brown was based on his poor attendance. It further states that probationary employees are forewarned that even a single absence during an employee's probationary period is grounds for termination. However, Farmland's attendance policy does not assess penalty points for absences arising out of "industrial illnesses," or, in other words, work-related injuries.

Brown's attendance record is not blemish-free during the short time he was employed by Farmland. His attendance calendar shows, and he concedes, that he called in sick on August 4, 1999 and was over three hours late for work on August 13, 1999. Plaintiff's App. Tab 17, at 71. He offers no explanation for these absences and does not assert that they were related to his foot injury.

Moreover, the parties dispute whether Brown should have been assessed penalty points for his July 16 and July 20, 1999 absences. Brown argues that they were related to his foot injury, and, pursuant to Farmland's attendance policy, should not have counted against him. Farmland maintains, however, that these absences were not the direct result of his injury, but rather resulted from Brown's outside activities. Specifically, Brown states in his deposition that he did not report to work on July 16, 1999 because his daughter inadvertently kicked his ankle as he was preparing to go to work, which caused extreme pain. Defendant's App. Tab 15, at 3 (Brown Depo., at 109, 11. 4–20). On July 20, 1999, Brown woke up with foot pain and took a prescribed pain killer. As a result, he was unable to drive to work. Defendant's App. Tab 15, at 4 (Brown Depo., at 110, 11. 13–25). Because Brown's physician had released Brown to work, Farmland contends that these absences were not "work-related." Brown, of course, disagrees with this characterization of his absences. In any event, this is not a case involving a model employee with a perfect attendance record. Thus, Farmland's contention that it dismissed Brown for excessive absenteeism does find some footing in reality. Accordingly, Farmland has met its burden to articulate a legitimate reason for Brown's discharge. Thus, in order to survive this Motion For Summary Judgment, Brown must meet his burden and generate a genuine issue of material fact on the pretextual nature of Farmland's "excessive absenteeism" reason for dismissing him. *Cf. Reeves,* 530 U.S. at 149, 120 S.Ct. 2097; *McDonnell Douglas,* 411 U.S. at 802–04, 93 S.Ct. 1817; *City of Hampton,* 554 N.W.2d at 536; *Hulme I,* 449 N.W.2d at 633. The court turns now to that inquiry.

#### 6. Pretext

 In *Reeves,* the United States Supreme Court held that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves,* 530 U.S. at 148, 120 S.Ct. 2097. Brown's claim of wrongful discharge asserts retaliation, not discrimination, but the *Reeves* Court's reasoning applies because Brown's claim, as stated above, is subject to the burden-shifting analysis. In this case, the court agrees that Brown has presented sufficient evidence of pretext to create a genuine issue of material fact and to give rise to an inference of retaliation.

Brown's evidence of retaliatory motive bolster his assertion of pretext. As discussed above, Brown, Nelson, and Britt suffered work-related injuries but did not receive oral warnings before being discharged. Other attendance calendars sub-

mitted by Brown show that workers who did not suffer compensable injuries were given oral warnings and were not dismissed despite poorer attendance. While Farmland is free to supplement these records at trial to show that Brown's evidence is incomplete and does not, in fact, show what Brown purports it to show, Farmland has opted not to supplement the attendance calendars at this stage in the litigation.

Farmland contends that its attendance policy for probationary employees is highly discretionary and that a single absence can result in dismissal; yet, failure to apply the policy to employees who do not file workers' compensation claims is grounds to question Farmland's proffered legitimate reason for Brown's dismissal. *See Wallace v. Halliburton Co.*, 850 P.2d 1056, 1059 (Okla.1993) (evidence of pattern of terminating employees who filed workers' compensation claims contributed to inference that plaintiff's filing for workers' compensation benefits was a "significant factor" in employer's decision to discharge the plaintiff). While Farmland's asserted discretionary policy is not inconsistent with its termination of Brown, its greater use of the policy to employees with workers' compensation claims precludes this court from granting summary judgment because Brown's evidence casts doubt on whether Farmland's proffered reasons were merely a pretext for retaliatory conduct.

Because Brown has generated a jury question on the reason for his discharge, summary judgment on this claim is precluded and, therefore, Farmland's motion on Brown's discharge in violation of public policy claim will be denied.

### D. Supplemental Jurisdiction Of State–Law Claim

▮ The court will grant Farmland's Motion For Summary Judgment on each of Brown's claims with the exception of his discharge in violation of public policy claim, which is a state-law claim. The court, therefore, must determine whether it will retain supplemental jurisdiction over Brown's state-law claim because, independently, it could not have been brought in federal court. The court may exercise supplemental jurisdiction, in its discretion, over the state-law claims in light of the advanced procedural posture of the case and the court's investment of time in the proceedings. *See* 28 U.S.C. § 1367(c)(3); *see also Pioneer Hi–Bred Int'l v. Holden Found. Seeds, Inc.*, 35 F.3d 1226, 1242 (8th Cir.1994) (the decision whether to exercise supplemental jurisdiction over state-law claims when federal claims have been dismissed depends upon "[f]actors such as convenience, fairness, and comity" and stating that "[i]t is the law of this circuit that 'the substantial investment of judicial time and resources in the case ... justifies the exercise of jurisdiction over the state claim, even after the federal claim has been dismissed'") (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)); *Murray v. Wal–Mart, Inc.*, 874 F.2d 555 (8th Cir.1989) (citing *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988), and *North Dakota v. Merchants Nat'l Bank & Trust Co.*, 634 F.2d 368, 371 (8th Cir.1980) (en banc)).

Section 1367(c) provides that a federal district court "may decline to exercise supplemental jurisdiction" if—

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). This subsection gives a court the discretion to reject jurisdiction over supplemental claims, "but only to a point." *McLaurin v. Prater*, 30 F.3d 982, 985 (8th Cir.1994). "The statute plainly allows the district court to reject jurisdiction over supplemental claims only in the four instances described therein." *Id.* Thus, where the case clearly fits within one of the subsections listed above, the court may decline to exercise supplemental jurisdiction. *Packett v. Stenberg*, 969 F.2d 721, 726–27 (8th Cir.1992).

 This case clearly fits within the third category, because it is a case in which "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). That being so, "the court should consider whether the exercise of jurisdiction advances 'the values of economy, convenience, fairness, and comity.'" *Allen v. City of Los Angeles*, 92 F.3d 842, 846 (9th Cir.1996), *overruled in part, Acri v. Varian Assocs., Inc.*, 114 F.3d 999 (9th Cir.1997) (en banc) (quoting *Executive Software v. U.S. Dist. Court*, 24 F.3d 1545, 1557 (9th Cir.1994)). Furthermore, "[i]t is the law of this circuit that 'the substantial investment of judicial time and resources in the case ... justifies the exercise of jurisdiction over the state claim, even after the federal claim has been dismissed.'" *Pioneer Hi–Bred Int'l v. Holden Foundation Seeds, Inc.*, 35 F.3d 1226, 1242 (8th Cir.1994) (quoting *North Dakota v. Merchants Nat'l Bank & Trust Co.*, 634 F.2d 368, 371 (8th Cir.1980)) (en banc), and also citing *Gilbert/Robinson, Inc. v. Carrie Beverage–Missouri, Inc.*, 989 F.2d 985, 993 (8th Cir.), *cert. denied*, 510 U.S. 928, 114 S.Ct. 338, 126 L.Ed.2d 282 (1993), and *First Nat'l Bank & Trust Co. v. Hollingsworth*, 931 F.2d 1295, 1307–08 (8th Cir.

1991); *accord Murray*, 874 F.2d at 558, which also stated that retention of jurisdiction is proper in such circumstances. Guided by these considerations, the court has no hesitation here in retaining supplemental jurisdiction over Brown's remaining state-law claim. This court has already invested sufficient resources in pretrial administration to make retention of jurisdiction appropriate. *Pioneer Hi–Bred Int'l*, 35 F.3d at 1242; *Murray*, 874 F.2d at 558. Furthermore, this matter is set for trial in this court in just over three months. The shortness of time before trial scheduled in this court and the uncertainties of the availability of a comparable trial date in state court mean that there are no "factors such as convenience, fairness, and comity" suggesting that remand should be preferred. *Pioneer Hi–Bred Int'l*, 35 F.3d at 1242; *Murray*, 874 F.2d at 558.

## III. CONCLUSION

Because the court has concluded as a matter of law that Brown does not suffer from a qualifying disability within the meaning of the ADA and the ICRA, the court **grants Farmland's Motion For Summary Judgment on Counts I, II, and III** of Brown's complaint. However, Brown has generated genuine issues of material fact on his discharge in violation of public policy claim, precluding this court from granting summary judgment. Therefore, the court **denies Farmland's Motion For Summary Judgment on Count IV.**

**IT IS SO ORDERED.**