Filed 3/18/13  Alghabra v. CVS Pharmacy CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MAHER ALGHABRA, | D059334 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2009-00104678-CU-OE-CTL) |
| CVS PHARMACY, INC., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, John S. Meyer, Judge.  Affirmed.

Plaintiff Maher Alghabra appeals from a judgment entered after the trial court granted summary judgment in favor of defendants CVS Pharmacy, Inc. (CVS); Garfield Beach CVS, LLC; CVS RX Services, Inc.; and Sylvester Arcaro (collectively "defendants") on Alghabra's first amended complaint alleging wrongful termination in violation of public policy and related claims.  Alghabra contends the trial court erred in granting summary judgment based on defendants' purported statutory immunity from

liability for the reporting of evidence of prohibited conduct by a pharmacist to the California State Board of Pharmacy (BOP). (Bus. & Prof. Code, § 4104.) He also contends he presented admissible evidence raising a triable issue of fact as to whether his employment was terminated in retaliation for his engaging in the protected activity of reporting to federal authorities suspicious activity involving the cash purchase of OxyContin by patients on welfare, and complaining to his pharmacy supervisor that the store manager was sending him and other pharmacy employees sexually explicit text messages. We conclude the court correctly granted defendants' motion for summary judgment because, in opposing the motion, Alghabra did not present sufficient evidence to raise a triable issue of fact as to the causal connection between his termination and his alleged protected activity.

I

FACTUAL AND PROCEDURAL BACKGROUND

Alghabra, a licensed pharmacist, began his employment with CVS as a pharmacy manager or "pharmacist-in-charge" (PIC) at CVS "Store No. 8842" in December 2006. During his employment with CVS, defendant Sylvester Arcaro was Alghabra's pharmacy supervisor, Robert Wiltfang was CVS's regional loss prevention manager, and Marshall Hayde was the district manager who supervised Arcaro and the nonpharmacy employees of Store No. 8842. During his year of employment with CVS, Alghabra brought about a substantial increase in pharmacy sales at Store No. 8842.

In September 2007, Alghabra contacted the San Diego RxNet task force to report suspicious activity he had observed in the purchase of the drug OxyContin for cash by

2

several pharmacy customers of Store No. 8842 who were welfare (Medi-Cal) recipients. Alghabra provided an agent of the federal Drug Enforcement Agency (DEA) copies of the suspicious prescriptions and the identities of certain customers whose prescriptions he believed had been forged. On September 21, 2007, Arcaro sent Wiltfang an e-mail message reporting that Alghabra had informed him about the suspected forged prescriptions and cash payments for OxyContin by patients who "appear homeless." Arcaro's message concluded: "[Alghabra] has reported to RxNet, but if you could follow up, I would appreciate it. This is bad." On November 13, 2007, Alghabra sent Arcaro an e-mail in which he identified three Medi-Cal patients who were willing to pay cash for OxyContin prescriptions and stated, "This is a continuation for an Oxycontin diversion scheme." He asked Arcaro to forward the information to the DEA agent in charge of the case. Arcaro replied to Alghabra's e-mail the same day, stating, "I know you won[']t read this for a couple of days — but nice job!" Arcaro instructed Alghabra and other pharmacists to continue to fill the prescriptions in question, but to exercise caution by calling the providers to verify that the prescriptions were legitimate.

In late October 2007, Alghabra and pharmacy employees under his supervision began receiving sexually explicit text messages on their cell phones from Carlos Salorio, the manager of Store No. 8842. Around November 1, 2007, Alghabra sent Arcaro an e-mail message complaining about the inappropriate text messages that Salorio and a photo clerk named Abbey were sending to Alghabra and other pharmacy employees. Arcaro turned the e-mail over to Hayde because Salorio and Abbey were under Hayde's, rather than Arcaro's, supervision. Arcaro told Alghabra that he and Hayde were looking

3

into the matter. On November 21, 2007, Alghabra complained to Arcaro in an e-mail that Salorio was "text messaging 24/7 to the employees in the Pharmacy on inappropriate materials and [that] Abby [*sic*] (photo staff is also involved)." Arcaro replied, "Thanks for the focus on this."

In late October or early November of 2007, during a routine inspection of pharmacy documents at Store No. 8842, Arcaro discovered discrepancies that suggested a customer was picking up multiple refills of hydrocodone, a narcotic drug and controlled substance, on refill prescriptions bearing the same number. Multiple pick-ups of the same refills at the same price suggested that the pharmacy was dispensing more medication to the customer than his prescriptions allowed. Arcaro discussed his discovery with Hayde and Wiltfang.

Arcaro, Hayde, Wiltfang, and another pharmacy employee went into the pharmacy on two different nights after the store was closed to further investigate the questionable hydrocodone refills. Salorio viewed store surveillance videos of the after-hours investigations and testified at deposition that he viewed Arcaro, Hayde, Wiltfang and the other employee who accompanied them remove several trash bags from the pharmacy that appeared to be three-quarters full, but he did not know what was in the bags.[1]

---

[1]  Alghabra states in his opening brief, as he stated in his opposition to the summary judgment motion, that this after-hours entry into the pharmacy and removal of trash bags occurred on November 26, 2007. However, he does not cite any evidence in the record showing the date it occurred.

Wiltfang testified that they made copies of documents related to the refill transactions in question, including prescription logs and prescriptions.

Based on their investigation, Arcaro and Wiltfang concluded that prescriptions were missing from the Store No. 8842 pharmacy and that Alghabra and employees under his supervision had illegitimately dispensed multiple refill prescriptions. On November 28, 2007, Wiltfang contacted a DEA agent he had worked with in the past and told her that Alghabra was fraudulently creating prescriptions and dispensing hydrocodone to a particular customer. He and Arcaro later met with DEA agents to discuss their investigation and the documents they had copied. Because the DEA was conducting its own investigation, Arcaro and Wiltfang discontinued their investigation. DEA agents told them not to speak with Alghabra about their findings while the DEA's investigation was pending.

On December 15, 2007, Alghabra came in to work on a scheduled day off at Arcaro's request. After he arrived, DEA agents arrested him and took him into custody. The DEA did not consult anyone at CVS before deciding to arrest Alghabra. The following day, Alghabra sent an e-mail to Arcaro stating: "This is my resignation as of today please put in- and [FedEx] my final paycheck and vacation check . . . ."[2]

_____

2      Alghabra testified at deposition that Arcaro fired him when he was arrested and that he sent the December 16, 2007 e-mail to "satisfy [his] self-esteem and ego after [he] was terminated and fired." Defendants dispute that Arcaro fired Alghabra, but for purposes of their summary judgment motion and this appeal, they assume Alghabra was terminated for misconduct.

Shortly after Alghabra's arrest, Arcaro submitted written reports to the DEA and BOP confirming the loss of controlled substances at Store No. 8842. In June 2009, the BOP fined CVS for a loss of hydrocodone at Store No. 8842. In January 2010, the BOP issued an accusation against Alghabra charging him with dispensing hydrocodone without a prescription and excessive furnishing of controlled substances. The DEA did not file any charges against Alghabra.

Alghabra filed the instant action in December 2009. His operative first amended complaint included causes of action for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) violation of Labor Code sections 201 through 203, (4) intentional infliction of emotional distress, (5) negligent infliction of emotional distress, (6) wrongful termination in violation of public policy, and (7) intentional interference with prospective business and economic advantage.

Defendants filed a motion for summary judgment. They sought summary judgment on the entire first amended complaint on the ground Alghabra's lawsuit was barred by Business and Professions Code section 4104, which requires pharmacies to report evidence of certain prohibited conduct by pharmacists to the BOP and provides that "[a]nyone making a report authorized or required by this section shall have immunity from any liability, civil or criminal, that might otherwise arise from the making of the report. Any participant shall have the same immunity with respect to participation in any

6

administrative or judicial proceeding resulting from the report." (*Id*., subd. (e).)[3]

Defendants additionally argued that the exclusive remedy provisions of the California Workers' Compensation Act (WCA) barred Alghabra's claims for intentional and negligent infliction of emotional distress because those claims arose out of conduct that is a normal part of the employment relationship. Regarding Alghabra's sixth cause of action for wrongful termination in violation of public policy, defendants argued that Alghabra could not show a prima facie case of retaliation for whistle blowing because there was no evidence of a causal connection between his claimed protected activity (reporting fraudulent OxyContin prescriptions and reporting sexual harassment) and the termination of his employment.

The court granted summary judgment on the entire first amended complaint. On appeal, Alghabra challenges the summary judgment only as to his fourth, fifth, and sixth causes of action. In its summary judgment ruling as to Alghabra's fourth and fifth causes of action for emotional distress, the trial court suggested, but did not clearly rule, that Alghabra's entire action was barred by the immunity provision of Business and Professions Code section 4104. The court granted summary judgment on those causes of action "based on the general premise that, as a matter of law, management of personnel does not constitute extreme and outrageous conduct for purposes of intentional and negligent infliction of emotional distress causes of action." The court added: "Moreover,

---

3    In 2007, current subdivision (e) of Business and Professions Code section 4104 was lettered subdivision (d).

7

[d]efendants had an obligation to report concerns about perceived loss of prescription medication to the DEA and [BOP]. (Bus. & Prof. Code[,] § 4104[, subd. (c)].) Defendants were legally obligated to report such issues to the DEA and enjoy an absolute statutory immunity when they do so."

Regarding the sixth cause of action for wrongful termination in violation of public policy, the summary judgment ruling began by noting that Alghabra "alleges wrongful termination in violation of public policy. He asserts two separate grounds for wrongful termination — wrongful termination based on his reporting to CVS that employees at his location were sending sexual text messages and wrongful termination in retaliation for reporting fraudulent prescriptions to the DEA. . . . As set forth, *infra*, the conduct of [d]efendants relative to the DEA and [BOP] was subject to the absolute immunity provided by [Business and Professions] Code [section] 410[4]."[4] Although it is somewhat unclear, we construe this statement in the court's ruling to mean that to the extent Alghabra's termination was in retaliation for his reporting fraudulent prescriptions to the DEA, the court found defendants statutorily immune from liability under Business and Professions Code section 4104.

Regarding Alghabra's claim that he was terminated in retaliation for reporting to management that employees at his location were sending sexual text messages, the court

_____

4    Following that statement, the court's only other reference to Business and Professions Code section 4104 was to note, in connection with the sixth cause of action for wrongful termination in violation of public policy: "Here, [d]efendants argue they had a 'legitimate, nondiscriminatory reason' for terminating [Alghabra]; specifically, his purported diversion of a controlled substance (hydrocodone), any suspicion of which was required to be reported under [Business and Professions] Code [section] 4104."

8

concluded that Alghabra "failed to submit any evidence that [d]efendants terminated him in retaliation for his reporting the purported inappropriate text messages." As to the sixth cause of action overall, the court granted summary judgment "based on [d]efendants' showing of a legitimate, nondiscriminatory reason for terminating [Alghabra], and [Alghabra] has failed to prove, or even infer pretext."

II

DISCUSSION

A motion for summary judgment or adjudication must be granted when there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) "A defendant 'moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact.' . . . A defendant may meet this burden either by showing that one or more elements of a cause of action cannot be established or by showing that there is a complete defense. . . . 'A defendant moving for summary judgment may establish that an essential element of the plaintiff's cause of action is absent by reliance on the pleadings, competent declarations, binding judicial admissions contained in the allegations of the plaintiff's complaint, responses or failures to respond to discovery, and the testimony of witnesses at noticed depositions.'" (*Mills v. U.S. Bank* (2008) 166 Cal.App.4th 871, 894, citations omitted (*Mills*).) "The defendant may, but need not, present evidence that conclusively negates an element of the plaintiff's cause of action. The defendant may also present evidence that the plaintiff does not possess, and

9

cannot reasonably obtain, needed evidence . . . ."  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 855.)

"If the defendant's prima facie case is met, the burden shifts to the plaintiff to show the existence of a triable issue of material fact with respect to that cause of action or defense.  [Citation.]  '"When opposition to a motion for summary judgment is based on inferences, those inferences must be reasonably deducible from the evidence, and not such as are derived from speculation, conjecture, imagination, or guesswork."'  [Citation.]  [¶]  Ultimately, the moving party 'bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law.'  [Citation.]  [¶]  We review a summary judgment or summary adjudication ruling de novo to determine whether there is a triable issue as to any material fact and whether the moving party is entitled to judgment as a matter of law.  [Citation.]  'In practical effect, we assume the role of a trial court and apply the same rules and standards which govern a trial court's determination of a motion for summary judgment.'  [Citation.]  '[W]e are not bound by the trial court's stated reasons for its ruling on the motion; we review only the trial court's ruling and not its rationale.'"  (*Mills*, *supra*, 166 Cal.App.4th at pp. 894-895.)

As noted, on appeal Alghabra challenges the summary judgment ruling only as to his fourth cause of action for intentional infliction of emotional distress, fifth cause of action for negligent infliction of emotional distress and sixth cause of action for wrongful termination in violation of public policy.  As to all of these causes of action, Alghabra asserts that granting summary judgment based on Business and Professions Code section 4104 immunity was erroneous because defendants did not plead immunity as an

10

affirmative defense and, in any event, did not meet the statutory requirements for immunity. We need not and do not address these contentions because on de novo review, we conclude that defendants are entitled to judgment on other grounds, as discussed below.

Alghabra's primary focus in this appeal is his claim that the trial court erred in granting summary judgment as to his sixth cause of action for wrongful termination in violation of public policy, in which he alleges that CVS violated public policy by terminating him in retaliation for his reporting fraudulent prescriptions to the DEA's RxNet task force and reporting acts of sexual harassment by the store manager. Accordingly, we begin our discussion with the sixth cause of action.

A.     *Cause of Action for Wrongful Termination Based on Retaliation*

Because California law prohibiting employment discrimination and retaliation is similar to federal law, "California courts look to pertinent federal precedent when applying our own statutes. [Citation.] In particular, California has adopted the three-stage burden-shifting test established by the United States Supreme Court for trying claims of [both] discrimination [and retaliation] . . . ." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 354 (*Guz*); *Coffey v. Dobbs Int'l Servs., Inc.* (2d Cir.1999) 170 F.3d 323, 326; *Sada v. Robert F. Kennedy Medical Center* (1997) 56 Cal.App.4th 138, 155; see *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792, 802-804 (*McDonnell*

11

*Douglas*).)[5] This test is commonly known as the *McDonnell Douglas* test. (*Guz*, *supra*, 24 Cal.4th at p. 334.)

"Labor Code section 1102.5, subdivision (b), provides that an 'employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.' A retaliation claim may be proved in two different ways.

"First, a plaintiff may prove retaliation by circumstantial evidence. In these cases, [the *McDonnell Douglas* test requires] the plaintiff . . . to first establish a prima facie case of retaliation. Once established, the defendant must counter with evidence of a legitimate, nonretaliatory explanation for its acts. If the defendant meets this requirement, the plaintiff must then show the explanation is merely a pretext for retaliation." (*Mokler v. County of Orange* (2007) 157 Cal.App.4th 121, 138 (*Mokler*).)

"Second, retaliation may be proved by direct evidence." (*Mokler*, *supra*, 157 Cal.App.4th at p. 138.) When a plaintiff offers direct evidence of retaliation that the trier of fact believes, the defendant may limit liability by proving the plaintiff would have been subjected to the same employment decision without reference to the unlawful factor. (*Harris v. City of Santa Monica* (2013) 56 Cal.4th 203 (*Harris*); see generally *Mokler*, at

---

5    Alghabra's wrongful termination claim is based solely on alleged retaliation; he does not claim he was subjected to unlawful employment discrimination.

12

p. 138.)[6]  The *McDonnell Douglas* test does not apply when the plaintiff presents direct evidence of retaliation.  (*Mokler*, at p. 138; *DeJung v. Superior Court.* (2008) 169 Cal.App.4th 533, 550.)[7]

To establish a prima facie case of retaliation in violation of Labor Code section 1102.5, subdivision (b), the plaintiff must show that (1) plaintiff engaged in protected activity, (2) the employer subjected plaintiff to an adverse employment action, and (3) there is a causal link between the protected activity and the employer's action. (*Mokler*, *supra*, 157 Cal.App.4th at p. 138.)  Similarly, to establish a prima facie case of retaliation under the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et

---

[6]  The defense that the plaintiff would have been subjected to the same employment decision without reference to the unlawful factor (i.e., discrimination or retaliation) where there is direct evidence of discrimination or retaliation is essentially a "mixed motive" defense.  The California Supreme Court recently addressed the issue of how the FEHA is to be applied to a mixed motive defense in *Harris*.  The Supreme Court held that "[w]hen a plaintiff has shown by a preponderance of the evidence that discrimination was a substantial factor motivating his or her termination, the employer is entitled to demonstrate that legitimate, nondiscriminatory reasons would have led it to make the same decision at the time.  If the employer proves by a preponderance of the evidence that it would have made the same decision for lawful reasons, then the plaintiff cannot be awarded damages, backpay, or an order of reinstatement.  However, where appropriate, the plaintiff may be entitled to declaratory or injunctive relief.  The plaintiff also may be eligible for an award of reasonable attorney's fees and costs under [Government Code] section 12965, subdivision (b)." (*Harris*, *supra*, 56 Cal.4th at p. 241.)

[7]  The California Supreme Court in *Harris* reaffirmed that employment discrimination or retaliation claims may be proved by either direct or circumstantial evidence, stating:  "[T]he law generally makes no distinction between circumstantial and direct evidence absent some affirmative indication in a statute and that both types of evidence can be persuasive in discrimination [and retaliation] cases." (*Harris*, *supra*, 56 Cal.4th at p. 232.)

13

seq.),[8] "a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action. [Citations.] Once an employee establishes a prima facie case, the employer is required to offer a legitimate, nonretaliatory reason for the adverse employment action. [Citation.] If the employer produces a legitimate reason for the adverse employment action, the presumption of retaliation '"'drops out of the picture,'"' and the burden shifts back to the employee to prove intentional retaliation." (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042.) The employee may meet that burden by presenting "'substantial responsive evidence' that the employer's proffered reasons were untrue or pretextual." (*Loggins v. Kaiser Permanente International* (2007) 151 Cal.App.4th 1102, 1109; *Gonzalez v. El Dia, Inc.* (1st Cir. 2002) 304 F.3d 63, 69.)[9]

---

[8] Prohibited retaliation under the FEHA is addressed in Government Code section 12940, subdivision (h), which provides that it is an unlawful employment practice for an "employer . . . to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part."

[9] Although the FEHA protects employees against retaliation for engaging in protected activity, "'"[it] is not a shield against harsh treatment at the workplace." . . . Nor does the statute require the employer to have good cause for its decisions. The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory [or unlawfully retaliatory] reason. . . . "While an employer's judgment or course of action may seem poor or erroneous to outsiders, the relevant question is . . . whether the given reason was a pretext for illegal discrimination [or retaliation]. The employer's stated legitimate reason . . . does not have to be a reason that the judge or jurors would act on or approve."'" (*Artega v. Brink's, Inc.* (2008) 163 Cal.App.4th 327, 344 (*Artega*).)

14

However, evidence that the employer's profferred reasons for an adverse employment action were pretextual does not automatically establish that the plaintiff employee was the victim of unlawful discrimination or retaliation. As the United States Supreme Court explained in *Reeves v. Sanderson Plumbing Products, Inc.* (2000) 530 U.S. 133 (*Reeves*) regarding employment discrimination claims, "the factfinder's rejection of the employer's legitimate, nondiscriminatory reason for its action does not *compel* judgment for the plaintiff. [Citation.] The ultimate question is whether the employer intentionally discriminated, and proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct.' [Citation.] In other words, '[i]t is not enough . . . to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination.'" (*Id.* at pp. 146-147, quoting *St. Mary's Honor Center v. Hicks* (1993) 509 U.S. 502, 511, 524, 519.) "*Reeves*' reasoning applies with equal force to . . . retaliation claims." (*Wells v. Colorado Dept. of Transp.* (2003) 325 F.3d 1205, 1218; see *Doebele v. Sprint/United Management Co.* (2003) 342 F.3d 1117, 1135-1136; *Mato v. Baldauf* (2001) 267 F.3d 444, 452; *Brown v. Farmland Foods, Inc*. (N.D. Iowa 2001) 178 F.Supp.2d 961, 983-984 [*Reeves* court's reasoning applies to a retaliation claim because a retaliation claim is subject to the *McDonnell Douglas* burden shifting analysis].)

In *Fisher v. Vassar College* (2d Cir. 1997) 114 F.3d 1332, 1337 (*Fisher*), the Court of Appeals observed: "A showing that the defendant's proffered reason for the adverse employment action is not the real reason may serve as evidence that the

15

defendant intentionally discriminated.  We attach the label 'pretext' to a proffered reason that is not credited by the finder of fact.  But the label 'pretext' does not answer the question: pretext for what?  In some cases, an employer's proffered reason is a mask for unlawful discrimination.  But discrimination does not lurk behind every inaccurate statement.  Individual decision-makers may intentionally dissemble in order to hide a reason that is [not discriminatory or retaliatory] but unbecoming or small-minded, such as back-scratching, log-rolling, horse-trading, institutional politics, envy, nepotism, spite, or personal hostility."

The *Fisher* court observed that "[t]he sufficiency of the finding of pretext to support a finding of discrimination depends on the circumstances of the case.  This is an unremarkable principle: the sufficiency of any evidentiary finding depends on the other findings and evidence that accompany it.  What is at issue is the drawing of inferences from human behavior.  Once the trial has moved to the stage at which the plaintiff must prove discrimination by a preponderance of the evidence, a defendant's false statements are nothing more than pieces of circumstantial evidence, which may be employed, as in many other types of cases, to reveal the speaker's state of mind.  To the extent that an actor in defendant's position is unlikely to have proffered a false explanation except to conceal a discriminatory motive, then the false explanation will be powerful evidence of discrimination.  On the other hand, if the circumstances show that the defendant gave the false explanation to conceal something other than discrimination, the inference of discrimination will be weak or nonexistent.  And if, on examination of the circumstances, there are many possible reasons for the false explanation, stated or unstated, and illegal

16

discrimination is no more likely a reason than others, then the pretext gives minimal support to plaintiff's claim of discrimination." (*Fisher*, *supra*, 114 F.3d at p. 1338.) The *Fisher* court reasoned that "while a prima facie case and a finding of pretext may in some cases powerfully show discrimination, neither one necessarily gives plaintiff much support in discharging his obligation to prove that he was the victim of discrimination. Indeed, the combined effect of both may have little capacity to prove what the plaintiff has the ultimate burden of proving. Thus, a finding of pretext, together with the evidence comprising a prima facie case, is not always sufficient to sustain an ultimate finding of intentional discrimination." (*Id.* at p. 1339.)

Under the reasoning of *Reeves* and *Fisher*, a plaintiff claiming unlawful employment retaliation "may prevail only if an employer's proffered reasons are shown to be a pretext *for* [*retaliation*], either because the pretext finding itself points to [retaliation] or because other evidence in the record points in that direction — or both. . . . '[A] reason cannot be proved to be a "pretext *for* [*retaliation*]" unless it is shown *both* that the reason was false, *and* that [retaliation] was the real reason.'" (*Fisher*, *supra*, 114 F.3d at p. 1339, italics added.)[10]

---

10      *Fisher* is commonly cited as having been abrogated by *Reeves*. However, the abrogation designation is inaccurate. The *Reeves* majority opinion does not state that *Fisher* is abrogated or disapproved, and as the Second District Court of Appeals explained in *James v. New York Racing Association* (2d Cir. 2000) 233 F.3d 149 (*James*), *Reeves* and *Fisher* are not inconsistent. Considering whether *Reeves* had overruled *Fisher*, the *James* court concluded that "the Supreme Court's reasoning in *Reeves* is wholly compatible and harmonious with our reasoning in *Fisher*. There is no inconsistency between the two rulings." (*James*, at p. 155.) The *James* court explained: "We reasoned in *Fisher* that 'evidence constituting a prima facie case prior to the

17

The California Supreme Court in *Guz* adopted the reasoning articulated in *Reeves* and *Fisher*, stating: ". . . *Reeves* made clear that even where the plaintiff has presented a legally sufficient prima facie case of discrimination [or retaliation], and has also adduced some evidence that the employer's proffered innocent reasons are false, the fact finder is not *necessarily* entitled to find in the plaintiff's favor. Thus, the [*Reeves*] court admonished, its holding should not be interpreted to mean 'that such a showing will *always* be adequate to sustain a . . . finding of liability. *Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that*

employer's proffer of a reason, coupled with the error or falsity of the employer's proffered reason may — or may not — be sufficient to show illegal discrimination.' [Citation.] In nearly identical terms the Supreme Court explained in *Reeves* that in some circumstances, a prima facie case plus falsity of the employer's explanation can, without more, be enough to support a reasonable finding that prohibited discrimination has occurred, and thus that a plaintiff may, under those circumstances, reach the jury on this evidence and without additional evidence, but that in other circumstances, a prima facie case, combined with falsity of the employer's explanation, will not be sufficient . . . ." (*James*, at pp. 155-156.)

The *James* court understood *Reeves* to hold that "once a minimal prima facie case is proved and the employer's nondiscriminatory explanation has been given, the *McDonnell Douglas* presumptions disappear from the case and the governing standard is simply whether the evidence, taken as a whole, is sufficient to support a reasonable inference that prohibited discrimination occurred." (*James*, *supra*, 233 F.3d at p. 156.) The *James* court concluded that both *Fisher* and *Reeves* "essentially stand for the same propositions — (i) evidence satisfying the minimal *McDonnell Douglas* prima facie case, coupled with evidence of falsity of the employer's explanation, may or may not be sufficient to sustain a finding of discrimination; (ii) once the employer has given an explanation, there is no arbitrary rule or presumption as to [its] sufficiency; (iii) the way to tell whether a plaintiff's case is sufficient to sustain a verdict is to analyze the particular evidence to determine whether it reasonably supports an inference of the facts plaintiff must prove — particularly discrimination [or retaliation]." (*James*, at pp. 156-157.)

18

*the action was discriminatory* [*or retaliatory*]. *For instance*, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory [or nonretaliatory] reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination [or retaliation] had occurred. [Citations.] . . . [¶] Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. These include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case . . . .'" (*Guz, supra*, 24 Cal.4th at pp. 361-362, quoting *Reeves, supra*, 530 U.S. at pp. 148-149.)

Thus, under *Reeves* and *Guz*, it is clear that even if an employee presents a sufficient prima facie case of unlawful retaliatory termination and substantial evidence that the employer's proffered reason for the termination is false, the employer will nevertheless be entitled to judgment as a matter of law if there is no substantial evidence that the termination was in fact retaliatory — i.e., that the termination was causally connected to the protected activity giving rise to the employee's retaliation claim.

In the present case, defendants presented evidence that they terminated Alghabra's employment for the legitimate, nonretaliatory reason that he and employees under his

supervision had illegitimately dispensed hydrocodone prescriptions.[11]  Specifically, the evidence showed that Arcaro discovered discrepancies in point of sale documents indicating a customer had been picking up multiple refills of a hydrocodone prescription with the same refill number.  Arcaro, Hayde, Wiltfang and another pharmacy employee investigated the questionable prescriptions, and the investigation led Arcaro and Wiltfang to conclude that Alghabra and employees under his supervision had illegitimately dispensed multiple refill prescriptions.

Given this evidence of a legitimate, nonretaliatory reason for his termination, the burden shifted to Alghabra to present evidence raising a triable issue of fact as to whether the true reason for his termination was retaliation for engaging in the protected activities of reporting fraudulent prescriptions to the RxNet task force and reporting acts of sexual harassment by the store manager.  To meet that burden, Alghabra had to present substantial evidence from which a trier of fact could reasonably find that his protected activity and his termination were causally connected.

The only evidence Alghabra cites of a causal connection between his termination and protected activity is the temporal proximity of the termination to his protected activity.  However, temporal proximity *alone* does not satisfy the plaintiff's burden of

_____

[11]     Because defendants introduced evidence of a legitimate, nonretaliatory reason for Alghabra's termination and did not rely solely on the premise that Alghabra failed to show a prima facie case of unlawful retaliation, we need not decide whether Alghabra's evidence sufficiently establishes a prima facie case.  (*Guz*, *supra*, 24 Cal.4th at p. 357.) Defendants' showing of a credible nonretaliatory reason for Alghabra's termination shifted the burden to Alghabra to rebut defendants' showing by pointing to evidence that raises a rational inference that intentional retaliation occurred. (*Ibid.*)

20

producing evidence that a proffered legitimate reason for employment termination was a pretext and that the plaintiff was actually discharged for a retaliatory reason. (*Nadaf-Rahrov v. Neiman Marcus Group, Inc.* (2008) 166 Cal.App.4th 952, 990.) Because the employee's burden of establishing a prima facie case of retaliation for protected activity is fairly minimal, temporal proximity between protected activity and the employee's subsequent termination may satisfy the causation requirement at the first step of the burden-shifting process, "*[b]ut temporal proximity alone is not sufficient to raise a triable issue as to pretext once the employer has offered evidence of a legitimate, nondiscriminatory reason for the termination.*" (*Artega*, *supra*, 163 Cal.App.4th at p. 353, italics added.) "Where the employee relies solely on temporal proximity in response to the employer's evidence of a nonretaliatory reason for termination, he or she does not create a triable issue as to pretext, and summary judgment for the employer is proper." (*Id.* at p. 357.) Accordingly, the court properly granted summary judgment on Alghabra's sixth cause of action for wrongful termination in violation of public policy based on retaliation because Alghabra produced no substantial evidence that his termination was causally connected to his alleged protected activity.[12]

---

12      As noted, the only response from defendants to Alghabra's reporting fraudulent prescriptions to the RxNet task force was an e-mail from Arcaro to Alghabra stating "nice job!" and his directive to continue to fill the prescriptions but to exercise caution by calling the providers to verify their legitimacy. At deposition, Alghabra testified that he *assumed* Arcaro was upset with him for reporting the suspicious prescriptions based on Arcaro's directive to continue filling them and Alghabra's view that CVS would take "heat" from the government over the prescriptions. However, he testified that he had no knowledge of the DEA putting any heat on CVS regarding the questionable prescriptions. The only evidence of defendants' response to Alghabra's complaint about sexual

Alghabra contends the evidence shows that defendants bore animus against him and that their purported legitimate reason for terminating him was untrue. As "direct evidence" that defendants' purported reason for terminating him was untrue,[13] Alghabra cites his deposition testimony that a former assistant manager of Store No. 8842 told him that she knew he had been "set up," and the deposition testimony of former CVS employee Lamya Alsabagh that another employee told her that "whatever happened with [Alghabra], it was like, planned or something."[14]

Assuming, without deciding, that Alghabra has presented substantial evidence that defendants bore animus against him and that their purported legitimate reason for terminating him was untrue, such evidence is insufficient to defeat defendant's summary judgment motion because it is not evidence that Alghabra's termination was *causally connected* to his alleged protected activity — i.e., that he was terminated *because* he reported fraudulent prescriptions to the DEA and complained about sexual texting in the

harassment in the form of sexual text messaging was that Arcaro told Alghabra that he (Arcaro) and Hayde were looking into the matter, and Arcaro's e-mail to Alghabra stating, "Thanks for the focus on this." Alghabra testified that he did not recall seeing any inappropriate comments, pictures, or text messages after he reported the matter to Arcaro, and did not know of any comments or documents that suggested Arcaro wanted to get rid of him because of his reporting of inappropriate text messages.

13      Alghabra's "direct evidence" argument does not raise the mixed motive defense issue addressed in *Harris*, *supra*, 56 Cal.4th 203 (*ante*, fn. 6), because he does not cite direct evidence of *retaliation* — i.e., direct evidence that his termination was causally connected to his protected activity. Rather, he claims there is direct evidence of *pretext* — i.e., that defendants' purported reason for his termination was untrue.

14      In his opening brief, Alghabra identifies the employee who spoke to Alsabagh as Salorio. The court sustained defendants' evidentiary objections to Alsabagh's testimony.

workplace. As we have discussed, a sufficient prima facie case of wrongful retaliatory termination plus substantial evidence that the employers' proffered reason for the termination is false will not defeat summary judgment if there is insufficient evidence that unlawful retaliation was the employer's true reason for the termination — i.e., that the termination was causally connected to protected activity on the part of the employee. Accordingly, notwithstanding the evidence that CVS's management employees felt animus toward Alghabra and wanted his employment terminated and the evidence that their purported reason for terminating him was pretextual, the trial court properly granted summary judgment on Alghabra's sixth cause of action because there is no substantial evidence in the record that his termination was causally connected to his alleged protected activity.[15] Alghabra's contention that his termination was in retaliation for his alleged protected activity amounts to conjecture and speculation, and "it is well established that a plaintiff's 'suspicions of improper motives . . . primarily based on

---

[15] In his deposition, Alghabra speculated that he was framed for arrest to prevent him from taking his book of business to a competing pharmacy, and in his opposition to defendants' summary judgment motion, he asserted that "false inventory results were reported to the DEA to entice the DEA to arrest Mr. Alghabra in order to ensure that [he] did not take his 4-million-dollar book of business away from Store 8842." Evidence that CVS management employees did not like Alghabra and set him up for arrest and termination to prevent him from taking his book of business to a competing pharmacy does not show a causal connection between his termination and his having engaged in the protected activity of whistle blowing fraudulent prescriptions or complaining about sexual harassment. To the contrary, Alghabra's claim that retaining his book of business was defendants' motive for framing and firing him undermines his claim that he was terminated in retaliation for whistle blowing or complaining about sexual harassment because the former claim constitutes a reason for his termination that is unconnected to his protected activities. Other than temporal proximity, there is no evidence in the record that management's animus toward Alghabra resulted from his protected activity.

23

conjecture and speculation' are not sufficient to raise a triable issue of fact to withstand summary judgment."  (*Kerr v. Rose* (1990) 216 Cal.App.3d 1551, 1563-1564, citing *Crosier v. United Parcel Service, Inc.* (1983) 150 Cal.App.3d 1132, 1139, disapproved on another point in *Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 700, fn. 42.)

B.        *Causes of Action for Intentional and Negligent Infliction of Emotional Distress*

Alghabra argues that if we reverse the judgment as to his cause of action for wrongful termination in violation of public policy, we must also reverse as to his fourth cause of action for intentional infliction of emotional distress and fifth cause of action for negligent infliction of emotional distress because emotional distress damages may be recovered under a cause of action for wrongful termination in violation of public policy. (See *Phillips v. Gemini Moving Specialists* (1998) 63 Cal.App.4th 563, 577.)  Alghabra is mistaken.  The fact that emotional distress damages may be recovered under a cause of action for wrongful termination in violation of public policy does not make them automatically recoverable under a separately pleaded cause of action for intentional or negligent infliction of emotional distress based on the same facts.

The trial court granted summary judgment as to the fourth and fifth causes of action based on its conclusion, as a matter of law, that "management of personnel does not constitute extreme and outrageous conduct for purposes of intentional and negligent infliction of emotional distress causes of action."  Quoting *Janken v. GM Hughes Electronics* (1996) 46 Cal.App.4th 55, 80, the trial court observed that "[m]anaging personnel is not outrageous conduct beyond the bounds of human decency, but rather

24

conduct essential to the welfare and prosperity of society."[16] Alghabra does not challenge the court's specific ruling on his fourth and fifth causes of action; his sole argument on appeal regarding his entitlement to emotional distress damages is that he is entitled to claim them under his sixth cause of action if we reverse the judgment as to that cause of action. Consequently, he has waived any claim on appeal that the court erred in granting summary judgment as to his fourth and fifth causes of action. (*Tan v. California Fed. Sav. & Loan Assn.* (1983) 140 Cal.App.3d 800, 811 [issues not raised in an appellant's brief are deemed waived or abandoned]; *Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6 [although review of a summary judgment is de novo, it is limited to issues that have been adequately raised and supported in appellant's brief].)

C.      *Remaining Contentions and Requests for Judicial Notice*

Alghabra contends the trial court erred in sustaining defendants' evidentiary objections to certain evidence he presented in opposition to defendants' summary judgment motion, namely, the declaration of his expert witness, Dr. Edward Bubar, regarding the standard of care that governs the dispensing of prescription refills and related subjects concerning pharmacy practice, and Alsabagh's deposition testimony

---

[16]     The trial court incorrectly viewed extreme and outrageous conduct as an element of both intentional infliction of emotional distress and negligent infliction of emotional distress. It is well settled that, unlike intentional infliction of emotional distress, a claim of negligent infliction of emotional distress is not an independent tort; it is simply the tort of negligence to which the traditional elements of duty, breach of duty, causation and damages apply. (*Burgess v. Superior Court* (1992) 2 Cal.4th 1064, 1072.) However, in ruling that defendants' reporting concerns about loss of prescription medication to the DEA was a proper management decision that cannot support a cause of action for intentional infliction of emotional distress, the court implicitly ruled that defendants' conduct did not constitute a breach of duty to Alghabra.

offered as evidence that defendants set up Alghabra's arrest by the DEA. We need not address these evidentiary issues because they are not material to the issue of whether the adverse employment actions taken against Alghabra were causally connected to his alleged protected activity.

Alghabra and defendants filed separate requests that we take judicial notice of legislative history materials pertaining to Business and Professions Code section 4104. We deny the parties' requests for judicial notice on the ground the materials in question are unnecessary to our resolution of the appeal. (*County of San Diego v. State of California* (2008) 164 Cal.App.4th 580, 613, fn. 29.)

DISPOSITION

The judgment is affirmed.

_____<br>IRION, J.

WE CONCUR:

_____
McCONNELL, P.J.

_____
O'ROURKE, J.